Eric MANUEL, Appellee,

v.

**OKLAHOMA CITY UNIVERSITY,**
Appellee,

**National Association of Intercollegiate
Athletics a/k/a NAIA, Appellant.**

No. 76668.

Court of Appeals of Oklahoma,
Division No. I.

June 16, 1992.

. Timothy E. McCormick, Tulsa, Edward J. Houlehan, Kansas City, Mo., and J. Dell Gordon, Oklahoma City, for appellant.

Mark Hammons, Michael A. Taylor, Oklahoma City, for appellee Eric Manuel.

Garvin A. Isaacs, Wendell B. Sutton, Oklahoma City, for appellee Oklahoma City University.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Appellee, Eric Manuel (Manuel), sought and obtained a permanent injunction prohibiting the Appellant, National Association of Intercollegiate Athletics (NAIA), from interfering with his scholarship to play varsity basketball for Appellee Oklahoma City University (OCU). He also sought to enjoin OCU to perform its basketball scholarship contract with him. After a nonjury trial, the trial court issued a permanent injunction enjoining the NAIA and OCU from interfering with Manuel's scholarship until he completes 10 semesters, or until he graduates, whichever occurs earlier. The NAIA appeals from that order.

The Supreme Court assigned this appeal to the Court of Appeals, Oklahoma City Divisions, on March 26, 1992, and it was reassigned to Division I on April 7, 1992. On April 8, 1992, this Court issued a show cause order to Appellant NAIA, ordering it to respond on or before April 21, 1992, why this appeal should not be dismissed as moot. Manuel has now completed his eligibility pursuant to the injunction. Appellees were directed to reply to Appellant's response on or before May 4, 1992. All parties to this appeal contend the case is not moot and that it should be decided on its merits.

The NAIA contends that this appeal presents issues of broad public interest because the trial court's action impacted upon other NAIA member schools which were allegedly told Manuel was ineligible. In its order, the trial court declined OCU's request to enjoin the NAIA from taking any retaliatory action against it as a result of its actions with regard to Manuel. It is possible, the NAIA contends, that OCU will be subject to possible sanctions and retroactive penalties, i.e., forfeitures, suspensions and additional penalties, under Article VI, Section C(3) of the NAIA By–Laws, if the appeal is dismissed and the injunction is no longer in effect. It contends that this appeal will "likely have a substantial effect upon challenges to NAIA eligibility rules." It also raises the issue of whether the trial court had subject matter jurisdiction to rule in this case, because of the general rule of non-interference by the courts to resolve disputes between members of a voluntary association, such as the NAIA.

OCU responds that the issues herein are not moot. It agrees with the NAIA that issues of OCU's potential liability in the nature of retroactive sanctions remain at issue. Absent an agreement with the NAIA that it will not seek retroactive sanctions and penalties against OCU, it contends that dismissal of this appeal will expose it to such retaliatory action by the NAIA.

Manuel also contends this appeal is not moot. He argues that although his eligibility has been completed, dismissal of the appeal and vacation of the underlying order will have the effect of lifting the injunction. He contends this could result in punitive actions against him by the NAIA, affecting

his liberty and property interest in the fruits of his intercollegiate participation, i.e., the honors and awards he received during his two years of participation at OCU. Additionally, he contends vacation of the injunction would leave OCU open to punitive actions by the NAIA for its having complied with the trial court's order, which would be a material infringement on the rights of that institution.

This Court finds that issues germane to this appeal remain to be resolved. The injunction issued by the trial court was to remain in effect "until such time as Manuel completes a total college attendance of ten (10) semesters or graduates, whichever occurs earlier." Thus, the injunction has served its purpose. The NAIA by-laws provide for retroactive sanctions for violations by NAIA member schools. The dismissal of this appeal possibly could leave unresolved the issue of potential liability for OCU's alleged rules violations by honoring Manuel's contract and scholarship.

We do not agree that dismissal of this appeal, because it may be moot, would operate to vacate the trial court's injunction. The judgment would not be affected. However, the parties have abided by the injunctive order of the court, as was their duty to do. Dismissal would leave the rights of the parties undecided. We now agree that the issues involved are not moot; and, this appeal will be decided on the merits.

A factual background is necessary. Before attending OCU, Manuel attended the University of Kentucky (UK) on a basketball scholarship. UK is a member of the National Collegiate Athletic Association (NCAA). Manuel played basketball at UK during his freshman year. However, the NCAA conducted an investigation of the UK basketball program which resulted in allegations that Manuel had committed academic fraud in taking the A.C.T. college entrance examination. His basketball eligibility was revoked, and UK was put on probation. Manuel became ineligible to participate in UK's basketball program or in any NCAA member basketball program. UK offered to allow him to stay in school with the scholarship in effect, although he would not be permitted to play basketball. Manuel declined UK's offer and attended Hiwassee Junior College in Tennessee, where he graduated with an associate's degree in 1990.

After his graduation from Hiwassee, several NAIA schools recruited Manuel and contacted the NAIA regarding his eligibility. In addition to OCU, these schools included Georgetown of Kentucky, Cumberland College and Auburn Montgomery. Manuel testified that neither the schools nor the NAIA told him that he was ineligible to play for an NAIA school. He stated that he never heard back from the schools after inquiry was made. He also testified that he had not been suspended from UK, or from any other school.

In April, 1990, OCU contacted Wallace Schwartz (Schwartz), the Associate Executive Director of the NAIA National Office, about Manuel's eligibility. Schwartz testified he told OCU's Athletic Director, Joseph "Bud" Sahmaunt (Sahmaunt), that the National Eligibility Committee (NEC) had determined Manuel was ineligible in 1989, but that OCU could request a clarification of his ineligibility. Sahmaunt disputes the fact that he was told this by Schwartz but stated he was told "the only thing that we should be concerned about was the suspension rule." Sahmaunt identified the "suspension rule" as Article V, Section F(6), of the NAIA By–Laws, which provides:

Transfer students who were suspended from the immediately previous identified institution at the time of transfer must establish two full semesters, two full trimesters or three full quarters of attendance at the NAIA institution or until the institutional disciplinary period at the previous institution has been terminated before intercollegiate participation at an NAIA institution shall be permitted.

Sahmaunt testified he told OCU's basketball coach, Darrell Johnson (Johnson), that he would have to clarify whether OCU would be in violation of the above rule; if Sahmaunt was assured there was no violation, they could then approach OCU's president for permission to continue the recruit-

ing process. He stated Johnson convinced him there was no suspension of Manuel at UK and that he had met all of the other requirements to complete an eligibility form to submit to a district eligibility chair which clarifies that person's eligibility. OCU's president gave the permission to continue the recruiting process.

Johnson later read in the newspaper that Manuel had been declared ineligible by the NAIA. Sahmaunt contacted Schwartz and inquired why he had not informed OCU of this earlier. He was told that not all information was given to all of its membership in the NAIA. He also told Sahmaunt that Manuel was ineligible under Article V, Section E(4), on "Termination of Eligibility", of the By–Laws:

4. A student who has completed eligibility at a four year institution is ineligible for further intercollegiate participation.

Johnson testified as to the interpretation of the above section. He stated that, after talking with athletic directors, college presidents and faculty reps in District 9 (which includes OCU), the unanimous consensus of the intent of the rule is "that you can't go to a four-year school, play four years, complete your eligibility and then transfer to another school and play some more. That's the intent of the rule." He stated that "completion of eligibility" is defined in two different places within the rule book by the NAIA: (1) also under Article V of the By–Laws, and (2) page 47 of the NAIA casebook. "Completion of eligibility" can occur:

(1) at the close of the final day of class upon completion of ten (10) semesters;

(2) upon graduation; or,

(3) after participating in four seasons of competition.

Johnson stated that section E(4) is to be read in light of the preceding three sections. He stated that, to his knowledge, the NAIA has never interpreted section E(4) in the same manner that it is being interpreted for Manuel. Johnson named a minimum of 15 students who had been declared ineligible by the NCAA, but who had played, or were playing, for NAIA schools. He also stated, with regard to section E(4) and the NCAA definition of completion of eligibility, i.e., the "five-year rule": [1]

And I think what they're saying because he is ineligible to play at Kentucky then he is ineligible to play at OCU. If they're going to interpret that rule that way then they better get ready to interpret it for thousands of other student athletes who are ineligible at NCAA schools either because of academics because they have been suspended, because of the Five Year Rule.

There are literally hundereds (sic) and hundreds of students (sic) athletes who are ineligible to go to any NCAA school but yet are routinely certified as eligible in the NAIA. There's lots of examples.

Johnson testified that "Rule 4", as section E(4) is commonly called, had not been applied to ban those who are ineligible at the institution at which they first started. He said the common interpretation is that Rule 4 is modified by the other definitions of "completion of eligibility", i.e., the preceding ten (10) semesters, graduation, or four seasons of competition. He testified that Manuel did not meet those criteria. At the time of the trial, Manuel had completed only six semesters, had participated in competition only two seasons and had not graduated.

Johnson also stated that Manuel was immediately eligible under the NAIA rules under Article V, Section H(2), pertaining to transfer students from junior colleges:

2. A student who has been identified with a four-year institution prior to attendance at a junior college must abide by the 16 weeks residency requirement applicable to a four-year college student. EXCEPTION: A junior college transfer who graduates from a junior college with a two-year degree or diploma as specified on the junior college transcripts and who has been identified with the junior col-

1. He explained that eligibility of students attending NCAA schools is terminated five calendar years from the date they begin classes.

lege for at least one full term (excluding summer school) immediately preceding graduation shall have the 16 weeks residency requirement waived.

Johnson also said that OCU considered Manuel to be eligible under Article V, Section D(6):

6. A student may participate four (4) seasons in one sport in 10 semesters of attendance or its equivalent. The 10 semesters need not be consecutive. During the ninth or 10th semester, or equivalent, the student may participate in any sport in which the student has not already used four seasons of participation.

Paul Hansen, a coach for many years of NCAA and NAIA member schools, and at that time, basketball coach at the University of Science and Arts of Oklahoma, in Chickasha, Oklahoma, testified that Manuel should be immediately eligible under the NAIA rule about junior college transfer students. He stated Manuel had two years of eligibility remaining at that time, provided he did not overstay the ten semester rule. He also stated he was aware of students who had been excluded from NCAA schools, but who were eligible to participate at NAIA schools. He testified, in fact, that recruiting services used by NAIA coaches highlight players who are ineligible for NCAA participation to focus on them for recruiting. He testified he was not aware of any NAIA by-law or rule which renders student athletes, who are ineligible under NCAA rules, automatically ineligible under NAIA rules.

■ The general rule is that the courts will not interfere with the activities of a voluntary association. *Mahan v. Agee*, 652 P.2d 765 (Okl.1982); *Board of Regents of the University of Oklahoma v. National Collegiate Athletic Association*, 561 P.2d 499 (Okl.1977); *Oklahoma Secondary School Activities Ass'n v. Midget*, 505 P.2d 175 (Okl.1972). There is an exception to the general rule, however, when the association's rules are interpreted in an unreasonable or arbitrary manner, not in good faith or in violation of the law of the land. *Mahan v. Agee*, supra; *Oklahoma Second-*

*ary School Activities Ass'n v. Midget*, supra.

■ We find the NAIA arbitrarily applied Article V, Section E(4) to Manuel. The NAIA apparently chose to interpret it, in this particular case, to mean that if a student athlete had become ineligible under NCAA rules, he was automatically ineligible under NAIA rules. The plain language of E(4), however, provides that there must be a completion of eligibility at a four year institution before a student athlete is ineligible to compete at an NAIA school. In the present case, there was evidence that Manuel did not complete his eligibility at UK, the only four year institution he attended prior to attending OCU. There was also evidence he was not suspended from UK for any other reason, but in fact was offered the opportunity to remain in school there as a non-athlete. The evidence shows that Manuel had received his Associate's Degree from Hiwassee, and was thus immediately eligible to play for OCU, pursuant to Article V, Section H(2). The evidence also shows Manuel had not participated in the maximum of 4 seasons in one sport in 10 semesters of college attendance, as mandated by Article V, Section D(6). The NAIA has no provision under its by-laws requiring those disciplined by the NCAA to be similarly disciplined by the NAIA, or a requirement that the NAIA must declare a student ineligible because of the fact he was ineligible under the NCAA. Finally, there was evidence through testimony of OCU officials, as well as non-OCU officials, that there were many specific examples of other student athletes who were ineligible under NCAA rules, but were eligible, and were in fact participating in athletic competition, under NAIA rules.

The NAIA, in effect, created a special rule for Manuel. Athletics in the United States is big business and is aided and subsidized by various levels of government because athletic teams, both amateur and professional, use facilities bought and maintained with public funds. Such facilities are, more often than not, owned by governmental sub-divisions and agencies. Engaging in college athletics has become a

method by which thousands of students attend college, presumably for the purpose of attaining an education. Many athletes so trained become highly trained professionals. Everyone in this capacity should receive equal treatment. The NCAA, as to larger 4–year colleges, and the NAIA, as to smaller 4–year colleges, operate virtual monopolies as to athletics and the use of a multitude of government owned athletic stadiums, field houses, and other facilities. They must treat athletes equally under their rules.

■ An appellate court will not reverse the judgment of a trial court granting injunctive relief unless the trial court clearly abused its discretion. *City of Bartlesville v. Ambler*, 499 P.2d 433 (Okl.1972); *Harrison v. Perry*, 456 P.2d 512 (Okl.1969). We hold there was no abuse of discretion in granting Manuel's permanent injunction.

■ The trial court correctly found that an injunction was necessary in this case. Injury is irreparable when it is incapable of being fully compensated by money damages, or where the measure of damages is so speculative that arriving at an amount of damages would be difficult or impossible. *Hines v. Independent School District No. 50, Grant County*, 380 P.2d 943 (Okl.1963). Manuel showed he would be irreparably harmed if injunctive relief had been denied because his scholarship would have been revoked. Without a scholarship, he would not have been able to attend OCU to obtain his college degree. There was testimony at trial that OCU does not have the extra money to fund an athletic scholarship if the student is unable to participate in the basketball program. Neither OCU nor the NAIA stood to suffer any detrimental effect or hardship by issuance of the injunction. OCU's officials stated that OCU intended to honor its contract and scholarship with Manuel. This Court can see no potential detriment to the NAIA by enjoining it not to interfere with Manuel's scholarship with OCU.

The manner in which the NAIA chose to interpret its own rules with regard to Manuel appears, from the evidence, to be contrary to the way it has interpreted them in the past as to other student athletes. Equal application of its rules to all participants cannot prove detrimental to the NAIA. Public policy considerations also rule in favor of the issuance of the injunction. The hard reality is that a college education is outside the reach of many students without the assistance of athletic scholarships. Once a student is fortunate enough to receive one, it should not be revoked through an arbitrary exercise of authority vested in a voluntary association such as the NAIA. We agree with the trial court's statement in its order that "the benefits received by the · community-at-large from having a high number of college graduates among its numbers are so obvious that they require no discussion."

■ The NAIA's argument that the trial court erred in enforcing Manuel's contract with OCU because of a lack of signature by the scholarship officer until the day before trial is not well taken. OCU officials testified that it not only. intended to honor the contract, but that it was already doing so. A court may consider the conduct of the parties to the contract, and if it appears there has been a meeting of the minds on essential elements of the contract, the court will construe the evidence in favor of the existence of a contract. *Queen Anne Candy Co. v. Eagle*, 184 Okl. 519, 88 P.2d 630 (1939), citing *Schoene v. Hicks*, 162 Okl. 294, 23 P.2d 170 (1933). The performance of both parties under the contract proved its mutuality and validity.

The judgment is AFFIRMED.

BAILEY, J., concurs.

ADAMS, J., concurs in result.