The NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION,
Petitioner,

v.

Joel Casey JONES, Respondent,

No. 98–0253.

Supreme Court of Texas.

Argued on Dec. 8, 1998.

Decided May 6, 1999.

---

**19.** 154 Tex. 289, 276 S.W.2d 798 (1955).

**20.** *Id.* at 805 (Wilson, J., dissenting).

**21.** RESTATEMENT (SECOND) OF TORTS § 858 (1979).

Dodd Owen Lafferty, Wayne P. Sturdivant, Amarillo, for Petitioner.

Gary M. Bellair, Lubbock, J. David Apple, Dallas, Tom H. Whiteside, Donald M. Hunt, Lubbock, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice HECHT, Justice ENOCH, Justice OWEN and Justice O'NEILL joined.

We must decide whether the court of appeals erred in dismissing as moot an appeal from a temporary injunction. The trial court granted Joel Casey Jones, then an offensive guard on the Texas Tech University Red Raiders' football team, a temporary injunction enjoining the National Collegiate Athletic Association ("NCAA") and Texas Tech University ("Texas Tech") from enforcing NCAA rules that would have cost him his eligibility for the 1996 football season. Jones also sought and obtained an injunction prohibiting the NCAA from enforcing NCAA Operating Bylaw 19.8 (the "Restitution Rule") against either Texas Tech or Jones. The Restitution Rule authorizes the NCAA to impose retroactive sanctions if an ineligible student-athlete competes under an injunction that is later voluntarily vacated, stayed or reversed, or found by the courts to have been improperly granted. The NCAA appealed, but the court of appeals declined the NCAA's request to expedite the appeal. As a result, Jones played out the season and completed his eligibility before the appeal was resolved. Finding no justiciable controversy, the court of appeals dismissed the appeal as moot and vacated the injunction. 982 S.W.2d 450. Because we conclude that the appeal as a whole is not moot, we reverse the judgment of the court of appeals and remand to that court for consideration of the merits.

The NCAA is a voluntary, unincorporated association of colleges and universities created for the stated purpose of preserving the proper balance between athletics and scholarship in intercollegiate sports. Among other things, the NCAA promulgates rules and regulations to prevent any member institution from gaining an unfair competitive advantage in an athletic program. This case arose when Texas Tech, a member institution of the NCAA, declared Jones ineligible for the 1996 football season, Jones's final year of eligibility.

Pursuant to NCAA rules, Texas Tech reported its action to the NCAA. However, the school also made repeated appeals for a waiver of the eligibility requirements, each of which the NCAA denied. Jones then filed a declaratory action against the NCAA and Texas Tech, seeking injunctive relief, damages, and attorney's fees. Jones did not claim that he was eligible to play under NCAA rules. Instead, he contended that he relied on representations made to him by Texas Tech officials about the appropriate courses in which to enroll to retain his eligibility. According to Jones, Texas Tech was an agent of the NCAA when it made these statements, so that the NCAA became bound by the representations and was required to grant the waiver. The NCAA filed no claims for restitution against either Texas Tech or Jones, and Texas Tech made no claims against the NCAA.

The trial court first issued a temporary restraining order and then a temporary injunction that: (1) enjoined the NCAA and Texas Tech from taking any action to prevent Jones from participating as a member of Texas Tech's football team, and (2) enjoined the NCAA from imposing any penalty on Jones or Texas Tech for complying with the court's order and specifically enjoined the NCAA from enforcing the Restitution Rule, which would permit the NCAA to impose penalties such as forfeiture of individual records, performances and awards, forfeiture of team victories, records, performances and awards, and forfeiture of receipts from any competition in which the ineligible athlete participated.[1] Although Texas Tech had not

1. NCAA Operating Bylaw 19.8 provides:

If a student-athlete who is ineligible under the terms of the constitution, bylaws or other legislation of the Association is permitted to participate in intercollegiate competition contrary to such NCAA legislation but in accordance with the terms of a court restraining order or injunction operative against the institution attended by such student-athlete or against the Association, or both, and said injunction is subsequently voluntarily vacated, stayed or reversed or it is finally determined by the courts that injunctive relief is not or was not justified, the Council may take any one or more of the following actions against such institution in the interest of restitution and fairness to competing institutions:

(a) Require that individual records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(b) Require that team records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(c) Require that team victories achieved during participation by such ineligible student-athlete shall be abrogated and the games or events forfeited to the opposing institutions;

(d) Require that individual awards earned during participation by such ineligible student-athlete shall be returned to the Association, the sponsor or the competing institution supplying same;

(f) Determine that the institution is ineligible for one or more NCAA championships in the sports and in the seasons in which such ineligible student-athlete participated;

(g) Determine that the institution is ineligible for invitational and post-season meets and tournaments in the sports and in the seasons in which such ineligible student-athlete participated;

(h) Require that the institution shall remit to the NCAA the institution's share of television receipts (other than the portion thereof shared with other conference members) for appearing on any live television series or program if such ineligible student-athlete participates in the contest(s) selected for such telecast, or if the Council concludes that the institution would not have been selected for such telecast but for the participation of such ineligible student-athlete during the season of the telecast; any such funds thus remitted shall be devoted to the NCAA postgraduate scholarship program; and

sought an injunction against the NCAA, the trial court presumably enjoined the NCAA from enforcing the Restitution Rule against the school based on Jones's claim that he would be adversely affected if the NCAA were free to sanction Texas Tech.

The NCAA filed an interlocutory appeal pursuant to section 51.014(4) of the Texas Civil Practice and Remedies Code, arguing that the trial court abused its discretion in issuing the temporary injunction. Texas Tech was not a party to the appeal. The court of appeals dismissed the appeal as moot and vacated the injunction, holding that both portions of the injunction became inoperative when Texas Tech's 1996 football season ended. 982 S.W.2d at 452. With regard to the portion of the injunction prohibiting the NCAA from imposing retroactive sanctions, the court of appeals further added that the injunction became inoperative at that time "because there was no justiciable controversy or pending action between Jones and the NCAA or the NCAA and Tech concerning the validity or enforcement of the restitution rule." 982 S.W.2d at 452. In so holding, the court of appeals rejected the NCAA's claim that its contractual right to impose retroactive sanctions under the Restitution Rule prevents the appeal of the temporary injunction from being moot. 982 S.W.2d at 451. We granted the NCAA's petition for review.

■■■ Appellate courts are prohibited from deciding moot controversies. See Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex.1988). This prohibition is rooted in the separation of powers doctrine in the Texas and United States Constitutions that prohibits courts from rendering advisory opinions. See TEX. CONST. art. II, § 1; see also Texas Ass'n of Bus. v. Air Control Bd., 852 S.W.2d 440, 444 (Tex.1993); Firemen's Ins. Co. v. Burch, 442 S.W.2d 331, 333

(Tex.1968). A case becomes moot if at any stage there ceases to be an actual controversy between the parties. See Camarena, 754 S.W.2d at 151. When a temporary injunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is also moot. See Parr v. Stockwell, 159 Tex. 440, 322 S.W.2d 615, 616 (1959); Texas Educ. Agency v. Dallas Indep. Sch. Dist., 797 S.W.2d 367, 369 (Tex.App.—Austin 1990, no writ). An appellate court decision about a temporary injunction's validity under such circumstances would constitute an impermissible advisory opinion. See generally Burch, 442 S.W.2d at 333; Texas Educ. Agency, 797 S.W.2d at 369.

Applying these well-established principles, the court of appeals concluded that the appeal from the temporary injunction order was moot as to both the portion of the injunction enjoining enforcement of the eligibility rules and the portion enjoining the enforcement of the Restitution Rule. 982 S.W.2d at 452. The NCAA argues, however, that a judicial determination about the validity of the temporary injunction remains important to resolve whether the NCAA may, contrary to the injunction's dictate, take remedial action against Jones and Texas Tech under the Restitution Rule. Relying on several cases from other jurisdictions, the NCAA contends that there is still a live controversy between the parties because it could impose retroactive sanctions against Jones and Texas Tech if the court of appeals concludes that the trial court abused its discretion in prematurely granting Jones relief. See McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458–59 (6th Cir.1997); Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 928 (8th Cir.1994); Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1318–19 (7th Cir.1992); Wiley v. National Collegiate Athletic Ass'n, 612 F.2d 473, 475–76

(i) Require that the institution that has been represented in an NCAA championship by such student-athlete shall return 90 percent of its share of the net receipts from such compe-

tition in excess of the regular expense reimbursement, or if said funds have not been distributed, require that they be withheld by the executive director.

(10th Cir.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980); *Cardinal Mooney High Sch. v. Michigan High Sch. Athletic Ass'n*, 437 Mich. 75, 467 N.W.2d 21, 24 n. 4 (1991). According to the NCAA, dismissal of the case as moot would leave the rights of the parties undecided.

Jones counters that the NCAA's restitution rights are moot because Bylaw 19.8 authorizes the NCAA to impose sanctions *only* if "[the] injunction . . . is subsequently voluntarily vacated, stayed or reversed, or it is finally determined by the courts that injunctive relief is not or was not justified. . . ." According to Jones, the rule does not authorize the NCAA to impose sanctions when an ineligible student-athlete competes under an injunction that becomes moot before further judicial action is taken. In short, Jones contends that the NCAA cannot rely on its restitution rights to avoid a finding of mootness because the NCAA has no restitution rights when the issue of the injunction's validity becomes moot before being resolved by the courts.

The court of appeals erred in concluding that the second part of the temporary injunction—the portion restraining the NCAA from penalizing Texas Tech or Jones—became inoperative merely because the NCAA had no pending action against either Texas Tech or Jones to enforce its restitution rights or to establish the validity of the Restitution Rule. The NCAA could not have instituted such an action because it was enjoined from doing so and, until a higher court determined otherwise, was bound to follow the trial court's order.[2] *See* TEX.R. CIV. P. 692 (disobedience of an injunction is punishable as contempt of court). This portion of the injunction remained in effect after the 1996 football season ended, barring the NCAA from taking any action against Jones or

Texas Tech under Rule 19.8 until the injunction was vacated by the court of appeals. This portion of the injunction would be moot, however, if either Jones or the NCAA, the only parties before the court of appeals, ceased to have a legally cognizable interest in the outcome of the appeal. *See, e.g., Camarena*, 754 S.W.2d at 151; *see also Jordan v. Indiana High Sch. Athletic Ass'n, Inc.*, 16 F.3d 785, 788–89 (7th Cir.1994) (appeal moot because plaintiff had no interest that could be adversely affected by the outcome of the appeal). But if dismissal would leave the rights of the parties undecided, the issues involved are not moot and the appeal should have been decided on the merits.

The NCAA clearly has an interest in having the injunction invalidated and set aside; otherwise, it can never impose any penalties under the Restitution Rule. Whether Jones has a tangible interest in the continued validity of the injunction, however, is a closer issue. If dismissal of the appeal as moot and lifting of the injunction would affect Jones's interest in the fruits of his intercollegiate participation during the 1996 football season, the appeal from the temporary injunction is not moot. *See McPherson*, 119 F.3d at 458–59; *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995); *Pottgen*, 40 F.3d at 928 (8th Cir.1994); *Crane*, 975 F.2d at 1318; *Wiley*, 612 F.2d 473 (10th Cir.1979); *Manuel v. Oklahoma City Univ.*, 833 P.2d 288, 290 (Okla.App.1992). Thus, the issue is whether the NCAA could now take any action that would have an adverse effect of substantial significance to Jones if the court of appeals were to address the merits of the temporary injunction.

There is no indication in the record or the parties' briefs as to whether Jones set any records or won any awards while participating under the injunction that could

---

2. Nothing in the record indicates that the NCAA sought to stay the injunction. Although the NCAA filed an expedited interlocutory appeal challenging the propriety of in-

junctive relief, the court of appeals overruled the NCAA's "motion for priority appeal" and did not issue a ruling until after the 1996 football season ended.

be stricken under the Restitution Rule. Likewise, the record does not reveal whether there are any team awards that could be stricken. The only remaining penalties that Jones could conceivably have an interest in avoiding are erasure of his individual performances, however that may be recorded for an offensive guard, and forfeiture of team victories.

There is some authority that the possibility of retroactive penalties does not prevent an appeal from being moot if the only possible penalty is forfeiture of team victories and the school, like Texas Tech in this case, is not a party to the appeal. *See Johnson v. Florida High Sch. Activities Ass'n, Inc.*, 102 F.3d 1172, 1173 (11th Cir. 1997); *Jordan*, 16 F.3d at 788–89. However, when a student-athlete represents to the trial court that he or she would personally be adversely affected if the school were penalized, courts have held that an appeal is not moot despite the absence of the school as a party on appeal. *See McPherson*, 119 F.3d at 458–59; *Sandison*, 64 F.3d at 1029–30. In seeking to prevent the NCAA from enforcing the Restitution Rule against Texas Tech, Jones specifically represented to the trial court that he would be adversely affected if the NCAA were not restrained from penalizing Tech. In addition to striking team victories, for example, the NCAA could also erase the records of Jones's individual performance in each game played in under the injunction. *See McPherson*, 119 F.3d at 458–59 (despite having graduated from high school, student-athlete continued to have an interest in preventing forfeiture of his team's victories and his own performances); *Sandison*, 64 F.3d at 1029–30 (same). Thus, we conclude that there is still a tangible and substantial controversy between the parties with respect to the portion of the injunction enjoining the NCAA from enforcing its restitution rights under Rule 19.8 against Jones and Tech. *See McPherson*, 119 F.3d at 458–59; *Sandison*, 64 F.3d at 1029–30. The court of appeals

thus erred in holding that the appeal as a whole is moot.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for consideration of the merits of the appeal.

Justice ABBOTT filed a dissenting opinion, in which Justice BAKER, Justice HANKINSON and Justice GONZALES joined.

Justice ABBOTT, joined by Justice BAKER, Justice HANKINSON and Justice GONZALES, dissenting.

The Court holds that the potential application of NCAA Operating Bylaw 19.8, the Restitution Rule, against Casey Jones and Texas Tech creates a live controversy between Jones and the NCAA. But by remanding this case, the Court forces the court of appeals to determine the validity of the temporary injunction that barred the NCAA from enforcing its eligibility rules against Jones. The issue of this injunction's validity is now moot; to determine its validity, the court of appeals must issue an impermissible advisory opinion. Furthermore, Jones has all but withdrawn from this case, disclaiming any interest he may have had in the NCAA's application of the Restitution Rule. Because this case presents no justiciable controversy between the NCAA and Jones, the only parties to this appeal, I dissent.

It is well established that the question of a temporary injunction's propriety becomes moot once the injunction is inoperative, and no longer of force and effect. *Parr v. Stockwell*, 159 Tex. 440, 322 S.W.2d 615, 616 (1959). And it is equally well established that appellate courts are prohibited from deciding moot controversies. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). When a temporary injunction issues to ensure that an allegedly ineligible athlete will continue to compete until the question of his eligibility is resolved, the question of the temporary injunction's validity

is rendered moot once the athlete graduates. *See University Interscholastic League v. Jones,* 715 S.W.2d 759, 760 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (holding that the issue of a permanent injunction's validity was mooted by the athlete's graduation); *see also McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 458 (6 th Cir.1997). Similarly, the question of the injunction's validity becomes moot when the athlete's season has ended and his eligibility to participate has expired. *See Fink v. Hinson,* 243 Ga. 337, 253 S.E.2d 757, 758 (1979) (holding that the validity of injunctive relief sought by students was mooted by football season's end). With the end of Texas Tech's 1996 football season, Jones had no more eligibility remaining; thus, the trial court's injunction prohibiting the NCAA from enforcing its eligibility rules is moot. I believe this fact is sufficient to moot the entire controversy.

The trial court issued a twofold injunction. By its terms, the order first enjoins the NCAA and Tech from enforcing the NCAA's eligibility rules: "[T]he NCAA and Texas Tech ... are commanded forthwith to desist and refrain from taking any actions, [or] enforcing any rule or bylaw to prevent [Jones] from participating as a member of Texas Tech's football team until judgment in this cause is entered...." The Court does not assert that there is a live controversy as to this portion of the injunction.

The second portion of the order enjoins the NCAA from enforcing its Restitution Rule:

Defendant NCAA is enjoined from involving and enforcing NCAA Operating Bylaw 19.8 entitled "Restitution" *in the event that this Court's* temporary restraining order or *injunction as to the NCAA's determination of [Jones's] eligibility is subsequently voluntarily vacated, stayed, or reversed or it is finally determined by this or any other Court that injunctive relief is not or was not justified.*

(emphasis added). This language mirrors that of the NCAA's Restitution Rule, which states that the Rule applies only if an "injunction is subsequently voluntarily vacated, stayed or reversed or it is finally determined by the courts that injunctive relief is not or was not justified." Application of the Restitution Rule (and also the injunction against the Rule's enforcement) is contingent upon determining the validity of the injunction against enforcement of the eligibility rules. This condition has not been satisfied—the injunction against the NCAA's enforcement of the eligibility rules has not been vacated, stayed, or reversed. Nor has any court determined that injunctive relief was or was not justified; that issue became moot before such a determination was made. Thus, by its own terms, the Rule may not be applied.

The NCAA could have avoided this predicament by amending the Restitution Rule to apply in cases like this, in which the eligibility issue becomes moot. For example, the Michigan High School Athletic Association employs a rule that tracks the Restitution Rule, but it may also take effect when an injunction "expires without further judicial determination." MHSAA Regulation V, § 4(C), *quoted in McPherson,* 119 F.3d at 455–56. With this language, no determination regarding the validity of an expired injunction would be necessary for the NCAA to apply the Restitution Rule.

Nevertheless, the NCAA argues, and the Court agrees, that a controversy continues to exist because the NCAA's right to apply the Restitution Rule, which would affect Jones's legal interests by stripping him of any individual records or awards he may have attained and canceling the team victories in which he participated, is contingent on determining the validity of the eligibility-rules injunction. In essence, the NCAA argues that because the determination of a moot issue (the injunction regarding eligibility) affects the parties' legal rights with regard to the application of the Restitution Rule, that issue is not really

moot. But even if the terms of the trial court's temporary injunction and the Restitution Rule itself do not prohibit the NCAA from enforcing the Restitution Rule in this instance, no live controversy exists between Jones and the NCAA regarding application of the Rule.

Because Tech is not a party to the appeal, any controversy must be between Jones and the NCAA. But Jones has disclaimed any individual interest he may have had in the NCAA's application of the Restitution Rule. Although Jones has not officially withdrawn, he has refused to mount a defense. Jones's attorney moved to withdraw as counsel before oral argument in this Court because Jones refused to pay him, and Jones's attorney received correspondence stating that Jones "does not want anyone doing anything further in connection with the appeal by the NCAA." "There can be no doubt that an action is mooted if the plaintiff voluntarily withdraws." 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3533.2, at 231 (2d ed.1984).

The Court nonetheless attempts to revive a controversy by looking to Jones's trial court petition. The Court states that "Jones specifically represented to the trial court that he would be adversely affected if the NCAA were not restrained from penalizing Tech." 1 S.W.3d at 88. It is true that Jones petitioned the trial court to enjoin the NCAA from enforcing the Restitution Rule in the event that the injunction against enforcement of the eligibility rules was struck down. But Jones did not seek the injunction for the reasons posited by the Court: to preserve team victories and prevent the NCAA from "eras[ing] the records of Jones's individual performance in each game played in under the injunction." 1 S.W.3d at 88. Rather, Jones's petition to the trial court states that he sought to enjoin application of the Restitution Rule to keep Tech from "exert[ing] significant pressure on [Jones] to forego judicial relief," and to avoid "the potential consequences his . . . decision to seek judicial relief may have on the institution, its athletic program and the team members." Jones has already brought these institutional pressures to bear by seeking judicial relief, and while he may regret seeing the NCAA penalize Tech, he has never argued that the subsequent application of the Restitution Rule will affect *his* legal interests now. Furthermore, the Court points to no "individual records or performances" that Jones could assert if he so chose. Application of the Restitution Rule would have a meaningful impact only on Tech; but the effect on Tech, a nonparty, does not create a controversy here.

Other courts have considered whether a live controversy continues to exist between a student and a governing organization solely because the student has an interest in preventing the organization from erasing team victories and individual performances. Their holdings conflict. *Compare McPherson,* 119 F.3d at 458–59, *and Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 928 (8th Cir.1994) (both holding that a live controversy continues to exist), *with Johnson v. Florida High Sch. Activities Ass'n,* 102 F.3d 1172, 1173 (11th Cir.1997), *and Jordan v. Indiana High Sch. Athletic Ass'n,* 16 F.3d 785, 788–89 (7th Cir.1994) (both holding that no live controversy exists). There is no controlling Texas authority. Nevertheless, Jones has waived any such interest.

It is the law in Texas, however, that we will not sanction a decision regarding a temporary injunction's validity once the injunction has become moot, because to do so would constitute an impermissible advisory opinion. *See, e.g., Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968). Yet, by remanding this cause to the court of appeals for a determination of the merits, the Court does just that. Because of the contingent nature of the injunction against enforcement of the Restitution Rule and the Rule itself, the court of appeals must decide the validity of the injunction against enforcement of the eligibility rules—a moot issue—before it can

ever address the injunction against the enforcement of the Restitution Rule. And any potential controversy concerning application of the Restitution Rule does not exist between the NCAA and Jones, who has disclaimed his interest, but rather between the NCAA and Tech, a nonparty. Accordingly, I dissent.