**Opinion issued February 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00704-CV

———————————

**ANTHONY WELCH D/B/A SUPERIOR CONSULTING GROUP, Appellant**

**V.**

**SPECIALIZED LOAN SERVICING, LLC AND FV-I, INC., IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-62795**

---

## MEMORANDUM OPINION

Appellant Anthony Welch *d/b/a* Superior Consulting Group obtained a

temporary restraining order to stop the sale of real property at foreclosure by

appellees, Specialized Loan Servicing, LLC and FV-I, Inc., in trust for Morgan Stanley Mortgage Capital Holdings, LLC (collectively, "the lenders"). After the temporary restraining order expired, the lenders conducted a foreclosure sale of the property. The trial court found that Superior Consulting Group had filed suit for an improper purpose. As sanctions, the court struck Superior Consulting Group's pleadings, dismissed its claims, and awarded the lenders attorney's fees.

In its sole issue on appeal, Superior Consulting Group argues that the foreclosure sale was void because the lenders posted the property for sale while the temporary restraining order was in effect. Superior Consulting Group also requests that we reverse the trial court's order dismissing its claims. We affirm.

## Background

### A. *The Litigation History*

In 2010, Deborah Nevarez and Parrish Witherspoon purchased a piece of real property in Cypress, Texas, and executed a promissory note for the purchase price. A vendor's lien secured payment of the promissory note, and Nevarez and Witherspoon also executed a deed of trust in favor of their mortgage company, AMCAP Mortgage, Ltd. Through a series of assignments, FV-I, Inc., in trust for Morgan Stanley Mortgage Capital Holdings, LLC, became the holder of the promissory note and obtained ownership of the deed of trust in 2015. In 2018, Nevarez and Witherspoon conveyed the property to Mr. Properties, which conveyed

2

the property to Superior Consulting Group in 2019. Both Mr. Properties and Superior Consulting Group are sole proprietorships operated by Welch.

Nevarez and Witherspoon defaulted on the note in 2015. Over the next six years, Nevarez, Witherspoon, Mr. Properties, and Superior Consulting Group filed multiple lawsuits to stop the lenders from foreclosing on the property. Nevarez, Witherspoon, Mr. Properties, and Superior Consulting Group have raised substantially the same claims in each lawsuit. None of these lawsuits have been successful.

Nevarez and Witherspoon first filed suit in May 2015, and this lawsuit was assigned to the 164th District Court of Harris County. That court granted summary judgment in favor of the lenders and dismissed Nevarez and Witherspoon's claims with prejudice in May 2016. Unsatisfied with this outcome, Witherspoon and Nevarez filed separate lawsuits in June 2017 and October 2017. These lawsuits were assigned to the 157th District Court and the 164th District Court, respectively, and the lenders removed both cases to federal court where the Southern District of Texas consolidated the suits into one proceeding. Upon the lenders' motion for dismissal under Federal Rule of Civil Procedure 12(b)(6), the federal district court granted the motion, ruling that the summary judgment order signed by the 164th District Court in May 2016 was res judicata and barred adjudication of the claims.

3

After Witherspoon and Nevarez conveyed the property to Mr. Properties in 2018, Mr. Properties began asserting similar claims against the lenders. A lawsuit filed in April 2018 was assigned to the 333rd District Court, and the lenders again removed the case to federal court. Upon the magistrate judge's recommendation, the federal district court dismissed Mr. Properties' claims based on res judicata in September 2018.

Undeterred, Mr. Properties filed another lawsuit raising the same claims—the fifth lawsuit concerning this property—in November 2018. This case was assigned to the 281st District Court, and the lenders again removed the case to federal court. Once again, the magistrate judge recommended dismissal of the lawsuit based on res judicata grounds, and the federal court dismissed the case in August 2019.

Mr. Properties conveyed the property to Superior Consulting Group, which filed a substantially similar lawsuit against the lenders in July 2019. This lawsuit was assigned to the 157th District Court. Superior Consulting Group alleged that the lenders did not have standing to seek non-judicial foreclosure because they had failed to provide Superior Consulting Group with a notice of default, notice to accelerate, and notice of foreclosure. It also alleged that there was a "discrepancy in the chain of title" and that there was no evidence that the lenders were "in ownership of the note." It further alleged that the assignments from the original lender to the current lenders were not valid.

Superior Consulting Group asserted the following claims: (1) improper lien due to a "break in the lien of the alleged noteholder"; (2) declaratory judgment that the lenders did not properly accelerate the loan, which had been paid in full; (3) improper acceleration of the loan; (4) suit to "remove cloud and quiet title"; and (5) declaratory judgment that the lenders did not follow proper procedures for foreclosing under the deed of trust and Texas law. Superior Consulting Group also requested a temporary restraining order ("TRO") and a permanent injunction to stop foreclosure.

In this prior proceeding, the trial court signed three summary judgment orders in favor of the lenders. In the first order, signed in October 2019, the trial court granted the lenders' summary judgment motion on Superior Consulting Group's claims, finding that the claims the property owners brought in their prior lawsuits "arose out of the same nucleus of operative facts raised by [Superior Consulting Group] in this matter." The court ruled that Superior Consulting Group take nothing on its claims "and that all claims brought by said Plaintiff against the [lenders] are hereby DISMISSED with prejudice as to the right to refile the same."[1]

---

[1]     Superior Consulting Group filed a notice of appeal from this summary judgment order. In July 2020, a panel of this Court dismissed the appeal for nonpayment of fees and for want of prosecution. *See Superior Consulting Grp. v. AMCAP Mortg. Ltd.*, No. 01-20-00020-CV, 2020 WL 4296894 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (per curiam) (mem. op.).

In the second and third orders, signed in December 2020, the trial court granted the lenders' traditional and no-evidence motions for summary judgment relating to a notice of *lis pendens* that Superior Consulting Group had filed on the property. In the order granting the traditional motion, the court found that Superior Consulting Group had "no evidence that it has a probable valid real property claim entitling [it] to the filing of a *lis pendens*." The court found that FV-I was the owner and beneficiary of the promissory note executed by Nevarez and Witherspoon and secured by a deed of trust. The note and deed of trust were "in material breach." The court expunged the notice of *lis pendens* and ruled that FV-I "has superior legal title to the Property" and "has the legal right of foreclosure and may proceed with foreclosure of the Deed of Trust and lien created therein."

## B.    *The Underlying Proceeding*

The lenders scheduled the property for foreclosure on October 5, 2021. On September 28, 2021, Superior Consulting Group filed the underlying lawsuit, the seventh lawsuit relating to this property. This petition was substantively identical to the petition Superior Consulting Group filed in July 2019 that was assigned to the 157th District Court.[2] Superior Consulting Group sought an ex parte TRO enjoining

---

[2]    The only changes that Superior Consulting Group made in the September 2021 petition was to add Nevarez as a plaintiff and to allege that the lien against the property had been released. Superior Consulting Group also argued that the lien had been released in its motion for reconsideration of the trial court's order dismissing its pleadings. It attached a purported release of lien to this filing. The lenders

6

the foreclosure sale. Superior Consulting Group did not make any reference to the prior litigation history of the case, the judgments that had been rendered against it or its predecessors in interest, or the 157th District Court's dismissal of the July 2019 lawsuit with prejudice.

The Harris County ancillary judge granted the ex parte TRO on September 30. This order prohibited the lenders from foreclosing on the property; evicting anyone from the residence; entering and taking possession of the property; "[p]roceeding with or attempting to sell or foreclose upon the home"; and attempting to purchase, transfer, assign, or collect on the mortgage "from the date of entry of this Order until and to the 14th day after entry or until further order of this Court." The ancillary judge set a hearing for October 8, 2021, to determine whether the TRO should become a temporary injunction.

The appellate record does not include a citation for the TRO, a writ of injunction, or a return of service. However, the lenders filed an answer on October 4, 2021. In their answer, the lenders briefly recited the history of the litigation between the parties and argued that Superior Consulting Group's petition was frivolous under Civil Practice and Remedies Code Chapter 10 and Texas Rule of Civil Procedure 13. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001–.006 (allowing

responded and presented evidence that this purported release was a fraudulent instrument.

7

trial court to impose sanctions if pleading is filed for improper purpose); TEX. R. CIV. P. 13 (allowing trial court to impose sanctions if pleading is groundless and brought in bad faith or for purpose of harassment). The lenders sought sanctions against Superior Consulting Group and its counsel.

On October 6, 2021, the lenders posted the property for foreclosure sale. The notice listed the date of the sale as November 2, 2021.

The TRO expired pursuant to its own terms on October 14, 2021. Superior Consulting Group did not request that the TRO be extended. No hearing was held on whether the TRO should become a temporary injunction.

The lenders moved for sanctions and attorney's fees on the basis that Superior Consulting Group's lawsuit was frivolous, groundless, and brought in bad faith. The lenders requested that the trial court strike Superior Consulting Group's pleadings and dismiss the lawsuit. As supporting evidence, the lenders attached the promissory note; the deed of trust; the assignments of the deed of trust to FV-I; the prior pleadings filed by Nevarez, Witherspoon, Mr. Properties, and Superior Consulting Group; three sets of recommendations by federal magistrate judges; and multiple orders from various state and federal courts dismissing the claims of the property owners.

Superior Consulting Group also requested that the trial court impose sanctions. It argued that the lenders posted the property for foreclosure on October

6, 2021, even though the TRO was in effect at the time. Superior Consulting Group requested attorney's fees as a sanction.

The foreclosure sale occurred on November 2, 2021.[3] On November 9, 2021, the trial court held a hearing on the lenders' motion for sanctions. That same day, the trial court granted the lenders' motion. In the order granting this motion, the court found that Superior Consulting Group was in privity with Mr. Properties, Witherspoon, and Nevarez.

The court then specifically found:

6.    Final Judgment has been rendered in favor of the Movant [the lenders] based upon claims raised by Parrish Witherspoon and Deborah Witherspoon in Cause No. 2015-30323 in the 164th Judicial District Court of Harris County, Texas, which claims arouse out of the same nucleus of operative facts raised by Plaintiff in this matter, and that subsequent actions, also based upon the nucleus of operative facts have been dismissed by the Southern District Court of Texas in Civil Action Nos. 4:17-CV-02675, 4:17-CV-02675, 4:18-CV-01528, and 4:19-cv-00062;

---

[3]    On appeal, the lenders argue that Superior Consulting Group's appeal is moot because the property has been sold at foreclosure and the status quo that Superior Consulting Group "seeks to preserve has long ago changed." "When a temporary injunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is also moot." *Nat'l Coll. Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). However, whether the ancillary judge erred by granting the TRO is not at issue in this appeal. The issue is whether the fact that the lenders posted the property for foreclosure sale while the TRO was in effect rendered the ensuing foreclosure sale void. Superior Consulting Group urges us to hold that the trial court erred by failing to set aside the foreclosure sale and by dismissing its pleadings. This is still a live controversy between the parties. *See id.* ("A case becomes moot if at any stage there ceases to be an actual controversy between the parties.").

7. Final Judgment was rendered in favor of the Movant based upon claims raised by Plaintiff Superior Consulting Group by this Court in Cause No. 2019-48510, wherein superior title to the Property and the right to foreclose was granted to Movant;

8. Plaintiffs and Plaintiffs' Counsel have filed various lawsuits in vain to delay the foreclosure sale of the Property;

9. Plaintiffs and Plaintiffs' Counsel have knowledge of the judgments entered against them and in favor of the Movant;

10. Plaintiffs and Plaintiffs' Counsel have abused the judicial system by filing a lawsuit for an improper purpose, with frivolous and/or groundless claims and/or claims which have been adjudicated against them, and which were brought in bad faith and/or for the purpose of harassment; and

11. To deter such conduct, the Court finds the sanctions set forth herein are worthy of the actions of the Plaintiffs and Plaintiffs' Counsel to deter such future conduct.

It is therefore, ORDERED, ADJUDGED AND DECREED that the claims made by Plaintiffs Superior Consulting Group and Deborah Nevarez are hereby stricken and dismissed in their entirety.

The trial court also awarded attorney's fees to the lenders.

Superior Consulting Group filed a motion to reconsider. In this motion, Superior Consulting Group requested that the trial court vacate the foreclosure sale that occurred on November 2, 2021, because the lenders had posted the property for foreclosure on October 6, in violation of the TRO. The trial court denied the motion to reconsider. This appeal followed.

**Validity of Foreclosure Sale**

In its sole issue on appeal, Superior Consulting Group argues that the foreclosure sale was void because the property was posted for sale while the TRO

10

was in effect. It requests that this Court set aside the foreclosure sale and vacate the trial court's order dismissing its pleadings.

## A. *Governing Law*

The purpose of a temporary restraining order is to the preserve the status quo, defined as the "last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962) (per curiam)).

A TRO becomes effective at the time the trial court signs the order and endorses the date and hour of issuance. TEX. R. CIV. P. 680; *In re Walkup*, 122 S.W.3d 215, 217–18 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). A TRO "shall expire by its terms within such time after signing, not to exceed fourteen days, as the court fixes," unless, upon a showing of good cause, the TRO is "extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." TEX. R. CIV. P. 680. Although the trial court may extend a TRO, it may only do so once unless subsequent extensions are unopposed. *Id.* "[A]ll temporary restraining orders are subject to Rule 680's limitations on duration." *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (orig. proceeding).

11

When a TRO is granted without notice to the opposing party, the application for temporary injunction shall be set for hearing at the "earliest possible date." TEX. R. CIV. P. 680. When the application for temporary injunction "comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a temporary injunction and, if he does not do so, the court shall dissolve the temporary restraining order." *Id.* Every TRO shall include an order setting a certain date for hearing on the temporary or permanent injunction sought. *Id.*

A TRO is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." TEX. R. CIV. P. 683; *Ex parte Jackman*, 663 S.W.2d 520, 523 (Tex. App.—Dallas 1983, no writ) ("The rules of civil procedure require only that the parties receive *actual notice* of the order by personal service or *otherwise*."). When a petition requesting a TRO or a temporary injunction is filed and that petition does not pertain to a matter already pending in the trial court, the clerk of the court shall issue citation to the defendant "as in other civil cases, which shall be served and returned in like manner as ordinary citations issued from said court." TEX. R. CIV. P. 686; *In re Poe*, 996 S.W.2d 281, 282–83 (Tex. App.—Amarillo 1999, orig. proceeding).

Rule of Civil Procedure 687 sets out specific requirements for a writ of injunction. TEX. R. CIV. P. 687; *see Ex parte Coffee*, 328 S.W.2d 283, 290 (Tex. 1959) (stating that "writ of injunction" includes temporary restraining order). If the writ is a TRO, it shall "state the day and time set for hearing, which shall not exceed fourteen days from the date of the court's order granting such temporary restraining order." TEX. R. CIV. P. 687(e). The writ must also "be dated and signed by the clerk officially and attested with the seal of his office and the date of its issuance must be indorsed thereon." TEX. R. CIV. P. 687(f).

When the petition, order of the judge, and the bond have been filed, the clerk must issue the TRO "in conformity with the terms of the order, and deliver the same to the sheriff or any constable of the county of the residence of the person enjoined, or to the applicant, as the latter shall direct." TEX. R. CIV. P. 688. The officer receiving the writ shall indorse the date of receipt, execute the writ by delivering it to the party enjoined, and file a return of service. TEX. R. CIV. P. 689. These procedural requirements are mandatory. *In re Guardianship of Chang*, 635 S.W.3d 444, 448 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

If a party disobeys an injunction, the trial court may punish the violation "as a contempt." TEX. R. CIV. P. 692. If an injunction is not void, it must be obeyed while it remains in effect, and any disobedience is properly punished by contempt. *Ex parte Jackman*, 663 S.W.2d at 524.

### B.    Analysis

Historically, Texas courts have held that a foreclosure sale that occurs in violation of a TRO or a temporary injunction is void and no title passes to the purchaser. *See, e.g.*, *Ward v. Billups*, 13 S.W. 308, 308 (Tex. 1890); *Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 729–30 (Tex. App.—Waco 1938, writ dism'd). Similarly, the Dallas Court of Appeals has held that even if the injunction has been dissolved at the time of the foreclosure sale, the sale will still be void if notice of the foreclosure sale was posted in violation of the injunction. *Jackson v. The Praetorians*, 83 S.W.2d 740, 741 (Tex. App.—Dallas 1935, no writ).

However, the Dallas Court of Appeals distinguished *Jackson* in a later case in which notice of a foreclosure sale was posted at the time a TRO was in effect, but no order or injunction was in force at the time of the sale. In *Tower Contracting Co. v. Central States, Southeast and Southwest Areas Pension Fund*, the owner of commercial property defaulted on a promissory note due to failure to pay property taxes. *See* 581 S.W.2d 724, 726 (Tex. App.—Dallas 1979, writ ref'd n.r.e.). The trustee under the deed of trust informed the owner that it intended to post the property for sale on June 3. *Id.* In a sworn petition requesting a TRO, the property owner swore that it had obtained an agreement from a third-party lender to pay the property taxes before June 3, and the trustee had orally agreed not to hold the sale if the taxes were paid. *Id.* The property owner alleged that, on May 30, the lender informed it

14

that funds would not be advanced. *Id.* The attorney for the trustee then refused to grant any additional time for payment of the property taxes and intended to conduct the sale on June 3. *Id.* A TRO issued on June 2. *Id.*

The TRO prohibited the trustee from posting the property for sale or conducting any sale before a hearing on the application for temporary injunction, which was set for June 12. *Id.* The trustee did not conduct the sale on June 3, but on June 9, it posted the property for sale occurring on July 1. *Id.* On June 12, the parties signed an agreement to dissolve the TRO. *Id.* The property owner agreed that it would not request a temporary injunction. *Id.* The parties also agreed that if they did not reach a new agreement concerning payment of the taxes by July 1, then the trustee would be free to proceed with foreclosure of the property without interference by the owner. *Id.* Ultimately, the trustee sold the property on July 1, and the property owner sought damages for wrongful foreclosure and tortious interference. *Id.*

The Dallas Court refused to hold that the property owner was entitled to damages on the theory that no valid notice of the foreclosure sale was posted. *Id.* at 727. The court stated:

> The only defect in the notice resulted from the temporary restraining order that plaintiff itself had obtained on obviously insufficient grounds. The petition alleged only that the [trustee] had agreed not to foreclose if plaintiff should pay the taxes by June 3, and that plaintiff expected to borrow the money to pay the taxes, but was notified by the prospective lender on May 30 that the money would not be advanced. Plaintiff makes no pretense in this suit that it had even an arguable ground for a temporary restraining order or a temporary injunction. In

15

its present petition plaintiff alleges simply that it obtained the temporary restraining order "(b)ecause plaintiff's source for raising the necessary funds was unexpectedly withdrawn." Plaintiff's president testified by deposition in the present action that the only reason for obtaining the temporary restraining order was to gain time in the hope that the necessary funds could be raised.

*Id.* In distinguishing the case before it from *Jackson*, the Dallas Court noted that the property owner had obtained the TRO "on a petition stating insufficient grounds" and that the owner "voluntarily withdrew" the order "after agreeing not to interfere further with the sale." *Id.*

The Dallas Court also reasoned that the property owner knew that the foreclosure sale would occur on July 1, but made no objection to the sale until afterwards. *Id.* Additionally, the court noted that the owner, as the plaintiff and party seeking the TRO, had the burden to show that it "acted in good faith when it applied for the temporary restraining order and not, as it now admits, deliberately to delay a sale that otherwise would have been entirely proper." *Id.* at 727–28. The property owner "abuse[d] the judicial process" when it sought a TRO without legal or equitable grounds. *Id.* at 728. The Dallas Court stated that the property owner "should not be able thus to rely on its own wrong to create a cause of action in its favor." *Id.* Therefore, the property owner was not entitled to damages. *Id.* at 727–28.

We conclude that this case, with its unique litigation history, is analogous to *Tower Contracting*. At the time Superior Consulting Group sought the TRO in the

16

underlying proceeding to halt a foreclosure sale scheduled for October 5, 2021, six judgments had been rendered against it or against its predecessors in interest. Nearly two years prior, the 157th District Court had, in a substantively identical case, granted summary judgment in favor of the lenders and dismissed with prejudice Superior Consulting Group's claims related to this property. Nine months before this proceeding began, the 157th District Court again granted summary judgment in favor of the lenders and expressly ruled that the lenders had superior legal title to the property and had the right to foreclose upon the property.

Since the 164th District Court rendered the first judgment against Nevarez and Witherspoon in May 2016, the owners of this property, including Superior Consulting Group, have engaged in impermissible forum shopping in the Harris County district courts. They have repeatedly filed substantively identical lawsuits after a court—whether state or federal—renders an adverse judgment against them. When it sought the TRO at issue in this proceeding, Superior Consulting Group disclosed none of this prior litigation history in its petition. It did not inform the ancillary judge that it had raised identical claims in prior lawsuits, but multiple state and federal courts had issued judgments against it and its predecessors. It also did not inform the ancillary judge that the 157th District Court had expressly ruled that the lenders had superior legal title to the property and had the right to foreclose.

The lenders presented evidence of this litigation history to the trial court and requested sanctions, including dismissal of the underlying proceeding. The trial court, supported by ample evidence, found that Superior Consulting Group, its predecessors, and its counsel had knowledge of the judgments entered against them. Nevertheless, Superior Consulting Group "abused the judicial system by filing a lawsuit for an improper purpose, with frivolous and/or groundless claims and/or claims which have been adjudicated against them, and which were brought in bad faith and/or for the purpose of harassment." To "deter such future conduct," the trial court struck Superior Consulting Group's pleadings and dismissed its claims "in their entirety."

Based on the factual record before it, the trial court did not abuse its discretion in granting the lenders' motion for sanctions and dismissing Superior Consulting Group's petition.[4] *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam) (stating that trial court's order imposing sanctions is reviewed for abuse of discretion). Moreover, we conclude that in light of the trial court's ruling that Superior Consulting Group abused the judicial process and filed the underlying petition seeking a TRO for an improper purpose, under the facts of this case, the trial

---

[4]    On appeal, Superior Consulting Group does not argue that the trial court erroneously found that Superior Consulting Group filed its petition for an improper purpose, asserted frivolous or groundless claims, or brought suit in bad faith or for the purpose of harassment.

court did not err by refusing to set aside the foreclosure sale that occurred on November 2, 2021, as void. *See Tower Contracting*, 581 S.W.2d at 727–28 (stating that, when seeking damages for wrongful foreclosure, plaintiff has burden to show that it acted in good faith when it sought TRO rather than attempting to deliberately delay foreclosure sale that "otherwise would have been entirely proper").

We overrule Superior Consulting Group's sole issue.

## Conclusion

We affirm the judgment of the trial court.


April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.