Eddie Lee TURNER and Mozella Donner, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

CHICAGO HOUSING AUTHORITY, et al., Defendants–Appellees.

No. 91–3003.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1992.

Decided July 29, 1992.

Catherine Cardwell MacCarthy (argued), Susan H. Rosenberg, Robert J. Mendes, Susan Comory, Mandel Legal Aid Clinic, Timothy Huizenga, Legal Assistance Foundation of Chicago, Daniel J. Delaney, Mayer, Brown & Platt, Chicago, Ill., for plaintiffs-appellants.

James J. Casey, Fred J. Posont, Bradford T. Yaker, Peter M. Shannon, Jr. (argued), Keck, Mahin & Cate, F. Willis Caruso, Chicago Housing Authority, Chicago, Ill., Jill E. Evans, Keck, Mahin & Cate, Los Angeles, Cal., for defendants-appellees.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Time has overtaken this case. Shaky at the outset, it is moot today.

Eddie Lee Turner and Mozella Donner rent apartments from the Chicago Housing Authority. Each faced eviction because of crimes committed, on the CHA's grounds but outside the rented apartment, by a son. The CHA commenced eviction proceedings in state court against Turner and Donner, contending that they failed to supervise the conduct of their guests. (The emancipated sons occasionally visit their mothers.) Eventually the CHA dismissed these proceedings, so Turner and Donner kept their apartments. While the state cases were pending they filed this suit under 42 U.S.C. § 1983, contending that the CHA's efforts to enlist parents into policing the conduct of their children—more generally, to induce tenants to be vigilant about the conduct of friends and relations on the CHA's grounds—violates the Constitution, and particularly a "right of intimate association."

The district court certified a class of all tenants whose leases were terminated because of the conduct of guests and relatives outside the rented apartment yet did not have eviction proceedings in state court. The limitation is designed to avoid *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), for tenants with current cases, and principles of issue and claim preclusion (collateral estoppel and res judicata) for tenants whose state cases are done. Eventually the court recognized that the two representative plaintiffs are not members of the class so defined. The judge then amended the definition to admit exactly two persons who have had eviction proceedings—Turner and Donner—into the class. This is a dubious move. Turner and Donner are not situated similarly to other tenants; Turner and Donner confronted the CHA and won, while the other members of the class were at risk. The representatives and the other members of the class accordingly have disparate interests, making the jerry-built class definition suspect. Cf. *General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (rejecting the "across-the-board" approach to defining classes); *Kremens v. Bartley*, 431 U.S. 119, 135–36, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Whether the problem is curable is a subject we need not decide, given the supervening events.

The CHA's policy was based on ¶ 9(k) of its standard lease: "The .Tenant shall ... conduct himself and cause other persons who are on the premises with his consent to conduct themselves in a manner which will not disturb his neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining the development in a decent, safe and sanitary condi-

tion". The district court granted summary judgment in favor of the class, on pendent state grounds, after determining that "the premises" refers to the apartment and not the common areas of the CHA's buildings and grounds. 760 F.Supp. 1299, 1305–08 (N.D.Ill.1991). The court issued an injunction forbidding the CHA to evict anyone on account of a guest's misconduct outside the leased apartment. The order states: "[D]efendants are permanently enjoined from terminating the tenancy of a CHA leaseholder under paragraph 9(k) of the current CHA dwelling lease based on conduct which occurs outside the leaseholder's dwelling unit".

Having decided the case in the plaintiffs' favor and awarded them the relief they set out to obtain—for ¶ 9(k) was the only provision of the lease on which the CHA relied—the court nonetheless pressed on. It determined that disputed factual questions prevented summary judgment on the constitutional questions and held a bench trial. After finding, among other things, that the "CHA does not have a policy of holding tenants responsible for acts of relatives that is different from the policy applied to other nonoccupants or guests", the court held that the CHA had not violated the tenants' associational rights. It observed that the CHA not only does not discriminate against "intimate" associates but also that state courts offer an adequate opportunity to contest the CHA's conclusions. (To remove a tenant, the CHA must bring a forcible entry and detainer action. Plaintiffs do not contend that it has resorted to self-help evictions.) The final judgment states: "The Court finds that defendants have not violated the class members' rights to freedom of association under the First Amendment as alleged in the Second Cause of Action; ... The Court finds that paragraph 9(k) of the CHA dwelling lease is not unconstitutionally vague or overbroad as alleged in the First and Fifth Causes of Action". 771 F.Supp. 924.

The CHA did not appeal from the injunction curtailing its enforcement of ¶ 9(k). So the tenants have won. Nonetheless they appeal, asking us to declare that ¶ 9(k) violates the Constitution.

■ Whether ¶ 9(k) does or does not violate the Constitution has no effect on the tenants' rights. They set out to obtain an order blocking the CHA's use of ¶ 9(k) to evict persons whose guests misbehave in common areas. They obtained that relief. Having decided the case by interpreting the lease, the district court should have stopped. Constitutional interpretation should not be offered without solid justification of a kind missing once a state-law ground supplies a complete foundation for decision.

[2] At oral argument counsel for the class contended that the prospect of recovering damages for emotional distress on learning that the CHA was enforcing ¶ 9(k) requires a constitutional decision even after that clause had been enjoined under state law. No such argument may be found in the briefs, and we deem the possibility waived (more accurately, forfeited). Injury must be proved; "presumed" damages are not available in litigation under § 1983. See *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Only Turner and Donner presented evidence of damages, and their failure to address the subject adequately in their briefs is sufficient reason to discuss it no further.

■ As it turns out, even the prospective relief has expired. The CHA rewrote its standard lease effective April 1, 1992. During oral argument, coincidentally held the same day, counsel for the CHA professed ignorance of the new language. Counsel for the class was better informed, having reviewed drafts that the CHA had circulated. Neither side informed the court of the new terms until we raised the topic at oral argument, despite the duty of counsel to bring such changes to judicial attention. *Fusari v. Steinberg*, 419 U.S. 379, 387 n. 12, 95 S.Ct. 533, 538 n. 12, 42 L.Ed.2d 521 (1975); *id.* at 390–91, 95 S.Ct. at 540 (Burger, C.J., concurring).

The new lease differs substantially from the old one, abandoning any reference to

"the premises" while stressing that the tenant is responsible for the actions of all persons "under the Tenant's control". New paragraph 9 reads, in part:

The Tenant ... shall be responsible for the behavior and actions of authorized residents, guests, visitors and/or persons under Tenant's control. The Tenant and ... guests, visitors or persons under the Tenant's control shall ... (i) conduct themselves and cause any authorized resident, guest or any other person under the Tenant's control to conduct themselves in a manner which will not disturb the neighbors' peaceful enjoyment of their dwelling ...; (j) refrain from illegal or other activity which impairs the physical or social environment of CHA property; ... (m) not use, possess nor bring explosives, guns, ammunition, fireworks, air rifles or any other weapons into CHA buildings or on or near CHA property ...; (n) not engage in criminal activity that threatens the health, safety or right of peaceful enjoyment of the CHA property/premises by other residents or employees of the CHA; (o) not engage in drug-related criminal activity, on or near CHA property.... (p) report within 14 days any person residing in or visiting the apartment that [sic] is engaging in criminal activity and/or that the Tenant cannot supervise and control. Failure to make such a report constitutes a waiver by the tenant of lack of control as a defense to any remedial actions taken by the Authority.

There is more, in the new handbook for tenants as well as in the lease. But this is enough to show not only the disappearance of the limitation to "the premises" but also the appearance of an emphasis on "the Tenant's control". A tenant is expected to control visitors or to report inability to do so.

Discussing the new lease in a memorandum filed after oral argument, counsel for the class contend that the dispute is live because the CHA has made tenants vicariously responsible for the conduct of their guests. This is one potential reading: the tenant is answerable for the conduct of (a) authorized residents, (b) visitors, (c) guests, or (d) any other person "under the Tenant's control". Yet one could readily understand the lease as imputing to the tenant misconduct of "authorized residents", plus the evil deeds of any other person "under the Tenant's control". On this reading the tenant must try to prevent crime and report any inability to control a misbehaving visitor. An obligation to discourage and report crime poses no constitutional difficulties. No "right of intimate association" permits a resident of public housing to sit back, neither exerting restraint nor reporting known problems to the landlord, while guests run riot. Crime in public housing injures other, innocent tenants. It serves the interests of tenants as a class—and of all their associations, intimate and otherwise—when managers try to bring guns and drugs under control. Tenants, who know the most about the behavior of their guests, may be recruited into anti-crime drives, paying for their apartments partly in money and partly in information and assistance.

Because the new lease was adopted while the case was on appeal, the record does not reflect how it is being administered. It would be possible to recast this case into a suit challenging the new lease, but as in *Kremens* such a step would be imprudent. The case began when ¶ 9(k) of the old lease, a provision that has been vaporized, was invoked against Turner and Donner. As we have explained, they won that dispute twice: fending off eviction in state court, and obtaining an injunction in federal court. Any new suit should be in the control of persons affected by the new lease, and not the lawyers of persons affected by the old one—if indeed there is a new dispute, which there will not be unless the CHA begins to administer the new lease as a rule of vicarious liability. The injunction refers to a clause that no longer exists and must be vacated. So, too, the advisory opinion in favor of the CHA concerning the constitutionality of old ¶ 9(k) must be set aside, to ensure that it does not affect future litigation.

The judgment of the district court is vacated, and the case is remanded with

instructions to dismiss as moot. *Department of the Treasury v. Galioto*, 477 U.S. 556, 106 S.Ct. 2683, 91 L.Ed.2d 459 (1986); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

CUDAHY, Circuit Judge, concurring.

I concur in the analysis and judgment while expressing no view on the constitutionality of the revised language of the lease.