16 F.3d 785
 89 Ed. Law Rep. 745
 Herman JORDAN, By and Through his next friend and parent,
Doretha JONES, Plaintiff-Appellee,
v.
INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC. and C. Eugene
Cato, in his capacity as Commissioner of the
Indiana High School Athletic
Association, Inc.,
Defendants-Appellants.
 No. 93-1435.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 29, 1993.
Decided Feb. 15, 1994.
 
 R. John Wray, Wray & Associates, Fort Wayne, IN, for plaintiff-appellee.
 Robert M. Baker, III, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, IN, Gilmore S. Haynie, Jr., Hawk, Haynie, Gallmayer & Chickedantz, Fort Wayne, IN, for defendants-appellants.
 Before RIPPLE, KANNE, and ROVNER, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 The district court granted injunctive relief in favor of a high school basketball player, Herman Jordan, prohibiting the Indiana High School Athletic Association from enforcing certain of its eligibility rules. As this lawsuit finally reached us for decision it ceased to be a case or controversy as required by Article III of the United States Constitution. We are thus without jurisdiction and the decision of the district court must be vacated and remanded and the case dismissed. The following describes why we reach this result.
 
 
 2
 Herman Jordan attended Marshall Metro High School in Chicago, Illinois for his freshman and sophomore years. Jordan enrolled at Marshall for his junior year, but later was forced to withdraw because of poor attendance. He received no academic credit for his junior year. Jordan did not participate in interscholastic athletics at Marshall, and under the rules of the Illinois High School Athletic Association he would have been ineligible to do so because of poor academic performance.
 
 
 3
 Jordan subsequently moved to Fort Wayne, Indiana to live with his uncle and cousin. He enrolled at R. Nelson Snider High School in Fort Wayne and repeated his junior year. He became a member of Snider High School's varsity basketball team and was selected as an all-conference player. Jordan wished to continue as a member of the basketball team as a senior, but according to Rule 12 of the Indiana High School Athletic Association ("IHSAA"),[1] he had exhausted his athletic eligibility. Rule 12 limits student athletes to a maximum of four Spring and four Fall semesters of high school interscholastic athletic eligibility. C. Eugene Cato, the Commissioner of the IHSAA, determined that Jordan had already been eligible for the maximum number of semesters.
 
 
 4
 Jordan appealed the Commissioner's decision to the IHSAA's Executive Committee. The committee concurred in the Commissioner's decision that Jordan had already been enrolled for four Spring and four Fall semesters and thus, under Rule 12, had no more athletic eligibility remaining.
 
 
 5
 Jordan, by his mother, Doretha Jones, filed suit in Indiana state court seeking an injunction against the IHSAA; C. Eugene Cato, Commissioner of the IHSAA; Snider High School; and Dennis V. McClurg, Snider's principal. Jordan contended that application of Rule 12 violated the Equal Protection Clause of the Fourteenth Amendment and the Equal Privileges Clause of the Indiana Constitution. The IHSAA removed this case to federal court.
 
 
 6
 The district court found that Rule 12, as applied, did not violate the Equal Protection Clause of the Fourteenth Amendment, but did violate the Equal Privileges Clause of the Indiana Constitution because it was both over- and underinclusive. The court also found that application of Rule 12 was arbitrary and capricious under Indiana's law of voluntary associations. Accordingly, the district court entered a permanent injunction against the defendants, prohibiting them from enforcing Rule 12 against Jordan.
 
 
 7
 Jordan played in seven of Snider's remaining regular season basketball games and played in two games of the 1993 IHSAA Basketball Tournament. Snider High School won three of those regular season games and one tournament game. Jordan also participated in an IHSAA sponsored "slam-dunk" contest at the Fort Wayne Northside sectional, earning first-place honors, and advancing to the 1993 state finals in Indianapolis, where he finished fifteenth out of fifty-six competitors. Jordan received an IHSAA Slam-Dunk T-shirt for participating in the Indianapolis contest. The IHSAA reimbursed Snider High School $24 for the expenses incurred for Jordan traveling to and from Indianapolis for the Slam-Dunk contest.
 
 
 8
 The IHSAA and its commissioner, Eugene Cato--but not Snider High School and its principal, Dennis McClurg--appealed the district court's decision. After the appeal of the IHSAA and Cato was filed, but before oral argument, Herman Jordan graduated from Snider High School.
 
 Discussion
 
 9
 Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies. Article III is based on the founding fathers' belief that only concrete controversies, involving genuinely adverse parties with a stake in the outcome of the litigation, are capable of presenting the information needed by federal courts to resolve difficult legal questions. Erwin Chemerinski, Federal Jurisdiction Sec. 2.1, p. 40 (1989); cf. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) (discussing standing).
 
 
 10
 Furthermore, it is well established that "an actual controversy must exist at all stages of appellate review, not merely at the time the complaint is filed." Honig v. Doe, 484 U.S. 305, 329, 108 S.Ct. 592, 607, 98 L.Ed.2d 686 (1988) (Rehnquist, J., concurring) (citing United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). If a case becomes moot at any stage of an appeal, the judgment below must be vacated and the case remanded with instructions to dismiss. Munsingwear, 340 U.S. at 39, 71 S.Ct. at 106-07; Turner v. Chicago Hous. Auth., 969 F.2d 461, 464-465 (7th Cir.1992).
 
 
 11
 It is undisputed that Jordan graduated from Snider High School in the spring of 1993 and therefore, the permanent injunction has expired. The IHSAA argues, however, that according to our holding in Crane v. IHSAA, 975 F.2d 1315 (7th Cir.1992), this case is not moot. In that case, we held that an IHSAA appeal was not moot despite the fact that the district court's injunction had expired under its own terms. The IHSAA had declared a student athlete ineligible to play varsity sports for one year, but the district court granted an injunction prohibiting the IHSAA from enforcing its determination. By the time the appeal reached this court, the one year period had expired. The student athlete, however, was just starting his senior year when our opinion issued and was still subject to the IHSAA eligibility rules. Id. at 1319.
 
 
 12
 We held that the appeal was not moot because, inter alia, IHSAA Rule 17-6 allows it "to impose retroactive penalties on student athletes (and their schools) who are declared ineligible by the IHSAA but are permitted to participate in interschool competition in accordance with a court restraining order or injunction." Id. at 1318. These penalties include: vacating individual or team records, requiring team victories to be forfeited to their opponent, and requiring individual or team awards to be returned to the IHSAA. Id.
 
 
 13
 As in Crane, the IHSAA argues that this case is not moot because it retains the power to order Snider to forfeit the four basketball games that it won with Jordan as a participant.[2] However, because Snider High School is no longer a party to this suit, any actions the IHSAA may take against it or its basketball team are irrelevant in determining whether a "live" controversy exists between Herman Jordan and the IHSAA. We do not read Crane as supporting a contrary finding, despite the fact that our opinion in that case contains isolated references to the actions available by the IHSAA against the school's athletic team. It is axiomatic that a case or controversy must exist between the actual parties to a law suit for a federal court to have jurisdiction under Article III. Thus, the fact that the IHSAA may require Snider High School to forfeit team victories or return team awards does not give this court jurisdiction to hear an appeal where Snider is not a party.
 
 
 14
 However, under Rule 17-6, the IHSAA may also require individual records achieved by an ineligible athlete to be vacated or stricken. As a result, the IHSAA claims a "live" case exists under Article III. Jordan played in a total of nine basketball games for Snider under the injunction. The evidence submitted for our review contains no reference to any "records"[3] achieved by Jordan in those nine games. As a result, there is nothing that Jordan achieved during his play for the Snider basketball team for the IHSAA to vacate. Jordan did place first in a local IHSAA sponsored Slam-Dunk Contest and advanced to the IHSAA state contest in Indianapolis where he earned a fifteenth place finish. Of course, "Slam-Dunk" is not a sport recognized by the IHSAA (Rule C-1-2). Such skill demonstrations are often carried out as pregame or halftime entertainment, and the results of those contests typically are not included as a part of the statistical records of basketball players. Under the facts of this case, any ability the IHSAA has to vacate Jordan's finishes in the Slam-Dunk contest is meaningless, either in the context of prospective basketball endeavors or personal achievement. There is no reasonable likelihood that Jordan would suffer any concrete injury by having his slam-dunk finishes vacated.
 
 
 15
 Finally, we consider whether the IHSAA's authority to require athletes to return awards earned while playing under a court ordered injunction is sufficient to meet Article III's case or controversy requirement. There is no evidence in the record that Jordan received any awards for his play as a member of the Snider basketball team. The record does disclose that Jordan received a T-shirt for participating in the Indianapolis Slam-Dunk Contest. The IHSAA asserts that they can require the return of Herman Jordan's T-shirt. But a T-shirt received for "participation" in a halftime contest where the recipient finished fifteenth is not an "award" as that term is normally used either by the IHSAA (Rule 6) or in general parlance. Again, the theoretical ability of the IHSAA to recover Jordan's used T-shirt hardly meets the constitutional requirement for "live" cases or controversies.
 
 
 16
 Even if it were to prevail, there appears no action the IHSAA could now take which would have any adverse effect of substantial significance on Herman Jordan. In fact, Jordan acknowledges that "this matter no longer [has] any significance for [him]." In his brief, Jordan contends that this case is moot because he completed the remainder of the basketball season and was about to graduate from Snider at the time his brief was filed in this court. It is not surprising that this case no longer has any significance for Jordan. There does not remain in this appeal the kind of "live" dispute between adverse parties required under Article III. Jordan simply no longer has a real stake in the outcome of this litigation required to confer jurisdiction on this court.
 
 Conclusion
 
 17
 The judgment of the district court is VACATED, and the case is REMANDED with instructions to dismiss as moot. Munsingwear, 340 U.S. at 39; Turner, 969 F.2d at 464-465.
 
 
 
 [1]
 The IHSAA is a voluntary association formed in 1903 which administers a program of high school interscholastic athletics in Indiana. IHSAA membership is open to both public and private secondary schools, but approximately 80% of its members are public schools. The IHSAA currently administers nine sports for boys and nine sports for girls. The IHSAA has issued various rules governing interscholastic athletics, including rules governing the eligibility of students to participate in IHSAA sponsored athletic events. See Crane v. Indiana High School Athletic Ass'n, 975 F.2d 1315, 1316-1317 (7th Cir.1992)
 
 
 [2]
 Along the same lines, the IHSAA argues that this case is not moot because if we reverse or vacate the injunction it has the power to order Snider to repay the $24 it was reimbursed for Jordan's expenses in attending the Indianapolis slam-dunk contest. Here again, however, this dispute does not directly implicate Jordan. This is a potential dispute between Snider and the IHSAA, which does not satisfy Article III's requirement that a "live" controversy exist between the actual parties to a law suit
 
 
 [3]
 While it is not entirely clear, we assume that the word "records" refers to achieving the highest individual performance level in several recognized statistical categories such as scoring and rebounding