
FILED
Mar 11 2016, 8:46 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

INDIANA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC

Robert M. Baker III
Law Office of Robert M. Baker III
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

GRIFFITH HIGH SCHOOL AND
THE INDIVIDUAL MEMBERS OF
ITS BASKETBALL TEAM

Rhett L. Tauber
Jared R. Tauber
Tauber Law Offices
Schererville, Indiana

HAMMOND HIGH SCHOOL AND
THE INDIVIDUAL MEMBERS OF
ITS BASKETBALL TEAM

Michael J. Jasaitis
Ryan A. Deutmeyer
Austgen Kuiper Jasaitis, P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana High School Athletic Association, Inc., and Hammond Gavit High School, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Nasir Cade, et al., <br> *Appellees-Plaintiffs.* | March 11, 2016 <br><br> Court of Appeals Case No. 45A03-1503-PL-84 <br><br> Interlocutory Appeal from the Lake Superior Court <br><br> The Honorable John R. Pera, Judge <br><br> Trial Court Cause No. 45D10-1502-PL-19 |

**Robb, Judge.**

# Case Summary and Issues

[1]    The Indiana High School Athletic Association ("IHSAA") appeals the trial court's order granting a preliminary injunction in favor of Hammond High School ("Hammond"), Griffith High School ("Griffith"), and individual players from each school's basketball team. The preliminary injunction prohibited the IHSAA from enforcing its suspension of Hammond and Griffith from the 2015 boys' basketball state tournament. The IHSAA contends the trial court erred in granting the preliminary injunction because neither the schools nor their students demonstrated a likelihood of success on the merits. In the alternative, the IHSAA argues the trial court erred in granting the preliminary injunction in favor of the students because the students lack standing and are not the real parties in interest. Concluding the students no longer have a legally cognizable interest in the outcome of this case, we remand with instructions to dismiss the students' claims as moot. As for the schools, we agree the trial court erred by concluding the schools demonstrated a likelihood of success on the merits; on the schools' claims, we reverse and remand for proceedings consistent with this opinion.

# Facts and Procedural History[1]

Both Hammond and Griffith are voluntary members of the IHSAA. On Saturday, February 7, 2015, the Hammond varsity boys' basketball team played the Griffith team at Griffith. A Hammond player fouled a Griffith player during the game, which caused the Griffith player to slam into the padded wall behind the basket and fall onto the floor.[2] Thereafter, members of both teams left the bench area and began fighting on the court. Coaches, parents, and fans entered the court during the altercation. Officials ended the game, and the schools suspended the students who were involved on the following Monday. Each student received a five-day out-of-school suspension.

The IHSAA promptly summoned Hammond and Griffith officials to IHSAA headquarters to review the circumstances of the incident. The meeting agenda listed four IHSAA rules to be discussed: Rule 3-1, Rule 3-6, Rule 8-1, and Rule 8-4. Rule 3-1 requires "each member School to control its athletic program in compliance with the rules and regulations of the Association." Appendix at 282. Rule 3-6 provides in relevant part,

> The member School's responsibility for the conduct of its athletic program includes responsibility for the actions of its staff

---

[1] We heard oral argument in this case on February 16, 2016, at Ivy Tech Community College in Lafayette. We commend counsel for their advocacy and thank Ivy Tech's faculty, staff, and students for their participation.

[2] *See* Northwest Indiana Times, *Brawl ends Hammond-Griffith boys basketball game*, YOUTUBE (Feb. 8, 2015), https://www.youtube.com/watch?v=0l4I3QFEtyw (showing the foul and ensuing fight, which lasted less than a minute).

members, its participants, and any other individual or organization actively engaged in activities promoting the athletic interests of the member School. A member School's "responsibility" includes the responsibility of instituting full and complete team and crowd control measures at all Contests in which such member School participates, assuring that the participants, staff and boosters of the member School conduct themselves at all times in a proper and sportsmanlike manner . . . .

*Id.* Rule 8-1 states a student's conduct "in and out of School, shall be such as (1) not to reflect discredit upon their School or the Association, or (2) not to create a disruptive influence on the discipline, good order, moral or educational environment in the School." *Id.* at 296. And finally, Rule 8-4 provides in relevant part,

> a. Any contestant, coach, Contest Administrator or School Administrator who is ejected from a Contest for an unsportsmanlike act *the first time during a sport season shall be suspended for the next Contest* at that level of competition and all other Contests at any level in the interim, unless an IHSAA sport-specific rule or policy provides a different protocol or penalty for a first ejection.
>
> * * *
>
> c. Any contestant, coach, Contest Administrator or School Administrator who is ejected from a Contest for an unsportsmanlike act *a second time during a sport season shall be suspended for the next two (2) Contests* at that level of competition and all other Contests at any level in the interim, unless an IHSAA sport-specific rule or policy provides a different protocol or penalty for a second ejection.
>
> d. This penalty shall be *in addition to* any other penalties assessed.

*Id.* at 296-97 (emphasis added). Rule 8-4 is a somewhat recent addition to the IHSAA rules, adopted as an emergency regulation on June 26, 2014. The agenda also cited NFHS Basketball Rule 10-4.5,[3] which defines a "bench technical" as a "flagrant foul" occurring when a player "[l]eaves the confines of the bench during a fight or when a fight may break out." Appellees' Joint Appendix at 2.

[4] IHSAA Commissioner Bobby Cox ("Commissioner") met with the schools on February 10 and issued two separate decisions the following day. The Commissioner's decisions are substantially the same, concluding both Hammond and Griffith violated IHSAA Rules 3-6 and 8-1 and NFHS Basketball Rule 10-4.5. The Commissioner imposed the same penalties with regard to each school: (1) suspending participation in the state tournament; (2) cancelling each school's remaining regular season games; (3) declaring the February 7 game a double forfeit; (4) requiring each basketball coach to complete a "Teaching and Modeling Behavior" course; (5) requiring each varsity boys' basketball player to complete a "Sportsmanship" course; (6) strongly encouraging all other boys' basketball players to complete a "Sportsmanship" course; and (7) placing both schools on probation for the entire 2015-16 school year. App. at 223-26. The Commissioner issued these sanctions pursuant to IHSAA Rule 17-7.1, which provides,

---

[3] NFHS is the National Federation of State High School Associations. *About Us*, NFHS, https://www.nfhs.org/who-we-are/aboutus (last visited Feb. 1, 2016).

For violation of a rule or disregard of a decision or directive made under these rules, some or all of the following action may be taken.

a.   The student may be declared ineligible to participate in interschool athletics for a period not to exceed Three-hundred Sixty-five (365) days.

b.   A coach may be prohibited from directing an athletic team which participates in interschool athletics.

c.   A member School may be:
   (1.)   prohibited from certain interschool athletic participation; or
   (2.)   warned; or
   (3.)   fined, including the forfeiting of revenues generated from the Association; or
   (4.)   suspended or placed on Probation for a period not to exceed Three-hundred Sixty-five (365) days by the Association.

d.   The Association may take *any* appropriate disciplinary or remedial measures or impose, or direct the imposition of, appropriate sanctions or penalties.

*Id.* at 329 (emphasis added).

[5]   Griffith and Hammond, on February 13 and 14, respectively, requested an appeal to the IHSAA Review Committee ("Review Committee"). Pursuant to IHSAA Rule 17-4.1, "*Any affected party* may appeal a decision of the Commissioner or his designee to the Review Committee for a review and hearing." *Id.* at 327 (emphasis added). Griffith's Appeal Statement indicated "Griffith High School & the individual members of its boys basketball team" were appealing the Commissioner's decision. Appellees' App. at 110. Likewise, Hammond's Appeal Statement identified "Hammond High School"

and "all members of the Hammond High School Basketball Teams" as "affected parties" appealing the decision. *Id.* at 27.

[6] On February 19, the IHSAA objected to the students' participation in the Review Committee appeal. The IHSAA argued the students lacked standing to appeal the Commissioner's decision because only the schools were found to have violated IHSAA rules. The Review Committee, through its Hearing Officer, found the students were not entitled to participate in the proceedings (because they were not "affected parties") and struck all of the filings made by individual students.

[7] The Review Committee conducted separate hearings on the Hammond and Griffith appeals on February 20. Both Hammond and Griffith argued the season-ending suspensions were excessive, overreaching, and unprecedented during the Commissioner's tenure, citing the penalties imposed for other instances of fighting in the past several years. Each school requested the Review Committee allow its basketball teams to finish the regular season on probation and participate in the state tournament.

[8] During both hearings, the Commissioner was asked about an incident between Fort Wayne South Side High School and Indianapolis Arsenal Tech High School in 2013, which involved students fighting, a student tackling a coach, and assistant coaches fighting on the field during a high school football game. In that case, the Commissioner placed the schools on probation, suspended the head coaches and the students for one game, and suspended the coaches who

were fighting for the remainder of the season. Both schools were allowed to finish the regular season and participate in the football state tournament. The Commissioner admitted the Hammond-Griffith incident was "similar" to the Fort Wayne-Arsenal Tech incident, but the Commissioner would not characterize the penalties imposed as being consistent or inconsistent with one another. *Id.* at 289-91. "It's a different incident. It's a different time. And it's a different penalty," the Commissioner maintained. *Id.* at 291.

[9] The Review Committee upheld the Commissioner's Hammond and Griffith decisions. The Review Committee found the Commissioner assessed the penalties for several reasons: (1) the schools' "catastrophic failure . . . to adhere to the tenets of proper sportsmanship;" (2) the "dangerous and unacceptable environment" created by the incident; and (3) "the ever-increasing demand upon the IHSAA to eradicate egregious and violent acts in education-based athletic settings." App. at 230, 242-43. The Review Committee also found the IHSAA had imposed "[s]evere penalties" in the past:

> 8.     In 1963 Muncie Central High School was suspended from the IHSAA because of hazing of a student on a bus and an all-out brawl in a sectional game, in 1967 Fort Wayne North Side High School was suspended from the IHSAA for amateurism violations, in 1967 Ossian High School was suspended from the IHSAA because of fans fighting on the floor, in 1972 Gary West Side High School was suspended from the IHSAA for a year because of a riot-like condition in the arena and parking lot at the end of the state championship game at IU in Bloomington, Indiana, in 1992, the year following its runner-up finish at the state basketball tournament, Brebeuf High School was suspended from the IHSAA basketball tournament series for recruiting and

undue influence and in 2006 Scecina High School was suspended from the IHSAA basketball tournament series for recruiting and undue influence violations.

*Id.* at 230-31, 243. As to more recent penalties imposed, the Review Committee found,

> 9. During the 4+ years that Commissioner Cox has been Commissioner, the IHSAA has had a series of unsporting behavior acts, including several instances of IHSAA member schools being involved in altercations in athletic contests.
>
> 10. After an altercation occurred in a football game held on October 3, 2013, between Fort Wayne South Side High School and Indianapolis Arsenal Tech High School, where the players, coaches, and fans from both schools left the team bench areas and the stands, entered onto the field and engaged in a physical altercation between players, coaches, and fans, the IHSAA board of directors directed Commissioner Cox and staff to commit to and form a sportsmanship task force made up of a wide range of people, coaches, administrators and board members.
>
> * * *
>
> 12. [T]he sportsmanship task force was created *because* of the South Side/Tech incident, *because* of the several other incidents where there were altercations (and where the penalties assigned were probation and some type of suspensions), and *because* those penalties which were assessed were not working. The sportsmanship task force sent a loud and clear . . . message to the IHSAA Commissioner, to the IHSAA staff and to the IHSAA board that penalties for these types of behaviors (game altercations) had to be dealt with in a much more severe manner and that these types of behaviors had to stop.

*Id.* at 231-32, 243-44 (emphasis in original) (footnotes omitted).

[10] Although the Commissioner did not consider the information in making his decisions, the Review Committee also noted the schools' records of unsporting conduct reports.[4] The Review Committee found Griffith had twenty-six unsporting conduct reports filed in the 2013-14 school year; that Griffith already had twenty-nine reports filed in 2014-15 school year, seven of which were filed on the basketball team; and that Griffith, out of all the IHSAA member schools, had the *most* reports filed during the 2014-15 school year. It found Hammond had twenty-seven unsporting conduct reports filed in the 2013-14 school year; that Hammond already had twenty-one reports filed in the 2014-15 school year; and that Hammond had the *second most* reports filed during the 2014-15 school year. The Review Committee considered the unsporting conduct reports a "significant factor" in reviewing the penalties assessed by the Commissioner. *Id.* at 233, 245.

[11] The Review Committee agreed Hammond and Griffith violated IHSAA Rules 3-6 and 8-1, as well as NFHS Basketball Rule 10-4.5 during the February 7 game. The Review Committee further concluded the Commissioner had "absolute discretion" to assess one of more of the penalties provided by IHSAA Rule 17-7.1 and that all of the penalties assessed were permitted by Rule 17-7.1. *Id.* at 235-37, 247-49. As to the schools' argument that the penalties were excessive and unprecedented, the Review Committee concluded the penalties

---

[4] Officials file unsporting conduct reports "where there is an ejectment or an unsportsmanlike event." App. at 232, 245.

were consistent with (1) "the penalties historically (going back to the 1960's, 1970's, 1980's and 1990's) assessed against schools for unsporting conduct and for other rule violations," and (2) "the penalties demanded by the sportsmanship task force and by the IHSAA board." *Id.* at 237, 249-50. In light of the video of the incident and each school's record of unsporting conduct reports, the Review Committee further noted it did not believe the penalties were too harsh.

[12] The Review Committee issued its decisions on February 25. Two days later, Griffith, Hammond, and individual players from both teams filed a complaint seeking judicial review of the decisions and a preliminary injunction. The regular season had concluded by that point, and sectionals began on March 3. The complaint alleged the Commissioner's decisions were "not a fair and logical interpretation or application of the IHSAA's own rules" and that the Review Committee's decisions upholding the penalties were arbitrary and capricious, illegal, overreaching, excessive, and offensive to basic notions of fairness. *Id.* at 42.

[13] The trial court scheduled a hearing on the request for an injunction for March 2 and ordered the IHSAA to redraw the sectional round of the state tournament to include Hammond and Griffith. At the hearing on the injunction, each school admitted seven exhibits: (1) the IHSAA's Statement of the Case, which included the exhibits admitted at the Review Committee hearing; (2) a transcript of the Review Committee hearing; (3) the objection, response, and ruling regarding the students' participation in the Review Committee hearing;

(4) the school's proposed findings and conclusions submitted to the Review Committee; (5) the IHSAA's proposed findings and conclusions submitted to the Review Committee; (6) the Review Committee's written decision; and (7) a list of YouTube videos showing recent incidents of fighting between IHSAA member school teams. In addition, each school offered witness testimony. Griffith called its principal, varsity basketball coach, and two Griffith basketball players; Hammond called its varsity basketball coach and one Hammond basketball player. Much of the testimony concerned the impact of the suspensions on college recruitment.

[14]  At the conclusion of the hearing, the trial court made oral findings and conclusions[5] and entered a preliminary injunction prohibiting the IHSAA from enforcing its suspension of Hammond and Griffith. The trial court concluded the penalties imposed constituted "disparate treatment" and suggested the IHSAA was not following its own rules:

> [I]t appears to me that what was going on here is the IHSAA was rightly concerned about outbreaks of violence and other unsportsmanlike conduct at various sporting events in the state . . . . [I]n response to this outbreak of . . . violence at schools and the unsportsmanlike conduct between some participants, they formed the Sportsmanship Task Force, with a view towards cracking down on this. And as a result of that effort, Rule 8-4 was promulgated by the IHSAA, which put everybody on notice

---

[5] The trial court made oral findings and conclusions because sectionals began the following day. *See Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 517 (Ind. Ct. App. 2009) (holding oral findings and conclusions are permissible "so long as they are thoroughly detailed in the record").

that if you're involved in any unsportsmanlike act during a sporting event and you're ejected, then you lose eligibility for one game, and if you're ejected again [in] the same season, you lose eligibility for two games. . . . But they didn't follow that here. Rather, they suspended both Hammond and Griffith . . . f[or] the remainder of the season and, also, any post-tournament play. Which, with respect to [Hammond], was four games. . . . And with regard to Griffith, it was six. So, what happened here, is that you have one school that got four times the penalty set forth in Rule 8-4 and you had another school with six times the penalty. And I feel that that's . . . disparate treatment. It was arbitrary and capricious and abuse of discretion and has to be set aside.

Transcript at 307-09.

[15] In granting the preliminary injunction, the trial court found the plaintiffs demonstrated they would suffer irreparable harm if they could not participate in the state tournament because players from both teams were being courted by college recruiters. The trial court concluded this threatened injury outweighed any potential harm to the IHSAA because the IHSAA would suffer no harm as a result of the injunction. As for a likelihood of success on the merits, the trial court concluded, "The Plaintiffs . . . set forth substantial evidence that supports their assertion that the decisions of the IHSAA w[ere] not based upon evidence presented, w[ere] illegal[,] arbitrary and capricious, excessive, and contrary to law." *Id.* at 310.

[16] In the weeks to follow, the schools participated in the state tournament. Hammond was eliminated in the sectional round, while Griffith advanced to

the state championship. In the interim, the IHSAA instituted this interlocutory appeal.

# Discussion and Decision

## I. Standards of Review

### A. School Challenges

As to its member schools, the IHSAA is a voluntary membership association. *Ind. High Sch. Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 230 (Ind. 1997). In Indiana, courts exercise limited interference with the rules and internal affairs of voluntary membership associations:

> A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

*Ind. High Sch. Athletic Ass'n v. Reyes*, 694 N.E.2d 249, 256 (Ind. 1997) (quoting *State ex rel. Givens v. Super. Ct. of Marion Cnty.*, 233 Ind. 235, 238, 117 N.E.2d 553, 555 (1954)). The rules of voluntary associations are viewed as a contract between the association and its members and among the members themselves. *Id.* Absent fraud, illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts do not interfere with the internal affairs of a voluntary association, nor second guess an association's interpretation or application of its rules. *Id.*

# B. Student Challenges

[18] The IHSAA is held to a stricter standard of scrutiny for student challenges. *Carlberg*, 694 N.E.2d at 230 (distinguishing student challenges from school challenges because students do not voluntarily subject themselves to IHSAA rules and have "no voice in its rules or leadership"). As a matter of state common law, we review IHSAA decisions applicable to particular students in a manner analogous to judicial review of administrative agency decisions:

> The courts therefore do not review IHSAA decisions *de novo* and do not substitute their judgment for the association's. Instead, courts apply an arbitrary and capricious standard to review IHSAA decisions. They analyze the record as a whole to determine whether substantial evidence supports the IHSAA's findings. They generally do not engage in their own fact-finding . . . .

> An IHSAA determination is arbitrary and capricious only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion. Where IHSAA findings of fact are supported by substantial evidence, we will not find them to be arbitrary and capricious. Evidence meets this standard when it is more than a scintilla; that is, reasonable minds might accept it as adequate to support the conclusion. It need not reach the level of preponderance.

*Ind. High Sch. Athletic Ass'n v. Watson*, 938 N.E.2d 672, 680-81 (Ind. 2010) (citations and internal quotation marks omitted). Accordingly, a trial court reviewing an IHSAA decision may not reweigh evidence or assess witness credibility. *Ind. High Sch. Athletic Ass'n v. Reyes*, 659 N.E.2d 158, 164 (Ind. Ct.

App. 1995), *summarily aff'd*, 694 N.E.2d 249, 253 (Ind. 1997). With respect to the factual determinations made by the IHSAA, a trial court must limit its review to the record of the proceedings before the IHSAA. *Id.*[6]

# II. Mootness

[19] The trial court granted a preliminary injunction that prohibited the IHSAA from enforcing its suspension of Hammond and Griffith from the 2015 boys' basketball state tournament. The injunction was issued on March 2, 2015, and the IHSAA filed its notice of appeal on March 9, 2015. The state tournament concluded on March 28, 2015, but neither party addresses whether the completion of the tournament renders this appeal moot. We have explained the mootness doctrine as follows:

> An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them. An actual controversy must exist at all stages of the appellate review, and if a case becomes moot at any stage, then the case is remanded with instructions to dismiss.

---

[6] A trial court may receive new evidence only if the evidence (1) pertains to a claim alleging the IHSAA failed to follows its own rules, or (2) could not have been presented, was not known, or could not reasonably have been discovered prior to the proceedings. *Reyes*, 659 N.E.2d at 164.

*Ind. High Sch. Athletic Ass'n v. Durham*, 748 N.E.2d 404, 410-11 (Ind. Ct. App. 2001) (citations omitted).

[20] We conclude Hammond and Griffith have a continuing interest in this case because IHSAA Rule 17-6 (known as the "Restitution Rule") permits the IHSAA to require schools forfeit team records, victories, awards, or funds received from participation in a tournament if

> a student is ineligible according to the Association rules but is permitted to participate in interschool competition contrary to Association rules but in accordance with . . . terms of a court restraining order or injunction against . . . the Association and the . . . injunction is subsequently voluntarily vacated, stayed, reversed or it is finally determined by the courts that . . . the injunctive relief is not or was not justified or correct . . . .

App. at 329. Because Griffith advanced to the state championship, this court retains jurisdiction to decide whether the trial court erred in granting the preliminary injunction as to the schools. *Cf. Jordan v. Ind. High Sch. Athletic Ass'n*, 16 F.3d 785, 788 (7th Cir. 1994) (stating the fact that IHSAA may require a member school to forfeit team victories or awards is insufficient to confer jurisdiction where the school is not a party to the appeal).

[21] As for the students, we conclude they no longer have a legally cognizable interest in the outcome of this case. Although the Restitution Rule also permits the IHSAA to require students forfeit individual records or awards, app. at 329, there is no evidence in the record showing any of the players achieved individual records or received individual awards for their participation in the

state tournament, *see Jordan*, 16 F.3d at 788 (holding a lawsuit arising from a preliminary injunction entered in favor of an individual student-athlete had ceased to be a case or controversy because "there appears no action the IHSAA could now take which would have any adverse effect of substantial significance on [the student]"). The students already participated in the state tournament, and nothing short of time travel can change that fact. To the extent the IHSAA's decision applied to particular students such that we would apply an arbitrary and capricious standard of review, the issue is moot because "absolutely no change in the status quo" would result from any decision rendered. *Bell v. State*, 1 N.E.3d 190, 192 (Ind. Ct. App. 2013) (citation omitted).[7]

## III. Preliminary Injunction

[22] To obtain a preliminary injunction, the moving party must demonstrate by a preponderance of the evidence: (1) a reasonable likelihood of success on the merits; (2) the remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (3) the threatened injury to the moving party outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by

---

[7] Because we conclude the students no longer have a legally cognizable interest in the outcome of this case, we do not address the IHSAA's arguments regarding standing or the real party in interest rule.

granting the requested injunction.  *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 803 (Ind. 2011), *cert. denied*, 133 S. Ct. 218 (2012).

[23]     The IHSAA contends the trial court erred in concluding the schools demonstrated a reasonable likelihood of success on the merits.  We agree.  Our supreme court has determined the IHSAA is treated as a voluntary association with respect to challenges brought by member schools.  *Carlberg*, 694 N.E.2d at 228.  Absent fraud, illegality, or abuse of civil or property rights having their origin elsewhere, we do not interfere with the internal affairs of a voluntary association, nor do we second guess an association's interpretation or application of its rules.  *Reyes*, 694 N.E.2d at 256.[8]  Here, the sanctions imposed did not violate IHSAA rules, and nothing in the rules requires the IHSAA to impose consistent punishments for similar violations.  *See id.* (stating voluntary associations may adopt rules "which will control as to all questions of discipline").[9]  There was no evidence suggesting the suspensions constituted

---

[8] Given the standard of review applicable to school challenges, we would note students appear to be without a remedy in the event the IHSAA suspends an entire school from participation.  Even if such students could prevail under an arbitrary and capricious standard of review, they would not be permitted to play on their own team and obviously could not play for another school's team without violating IHSAA's eligibility and transfer rules.  *See* App. at 342-51.

[9] *See* App. at 296-97, 329 (IHSAA Rule 17.7-1(c), providing a member school may be prohibited from certain interschool athletic participation or suspended for a period not to exceed 365 days; IHSAA Rule 17.7-3, providing a member school may be suspended without previous warning or probation; IHSAA Rule 8-4, providing the one-game suspension penalty applicable to students for first time contest ejections shall be in addition to any other penalties assessed; and IHSAA Rule 17.7-1(d), providing the IHSAA may impose *any* appropriate sanctions, penalties, or disciplinary measures).

fraud, illegality, or an infringement of rights as to the schools, yet the trial court concluded the schools demonstrated a likelihood of success on the merits.

[24] The trial court also failed to distinguish between the schools and the students and seemed to apply an arbitrary and capricious standard of review to both challenges. Even assuming an arbitrary and capricious standard of review should apply to school challenges, the trial court exceeded the scope of such review by engaging in its own fact-finding. Instead of analyzing the record to determine whether substantial evidence supported the Review Committee's decision, *see Watson*, 938 N.E.2d at 680, the trial court concluded *the plaintiffs* "set forth substantial evidence" to support their position, tr. at 310. The trial court applied the incorrect standard of review to the schools' challenge, improperly substituted its own judgment for the IHSAA's, and erred by concluding the schools demonstrated a reasonable likelihood of success on the merits. In short, the trial court erred when it granted the schools' request for a preliminary injunction.

# Conclusion

[25] Because the students no longer have a legally cognizable interest in the outcome of this case, we remand with instructions to dismiss the students' claims as moot. As for the schools' claims, the trial court erred by granting a preliminary injunction because the schools did not demonstrate a reasonable likelihood of success on the merits. We therefore reverse as to the schools and remand for proceedings consistent with this opinion.

Reversed and remanded.

Barnes, J., and Altice, J., concur.